Thomas F. HARTNETT, Plaintiff,

v.

Max CLELAND, Administrator of the Veterans Administration, Defendant.

Civ. A. No. 77–726.

United States District Court, South Carolina, Charleston Division.

May 11, 1977.

Leonard L. Long, Jr., and Ellison D. Smith, IV, and Associate Counsel N. Edward Horowitz, Charleston, S. C., represented the plaintiff.

Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., and Elliott Barrows, Jr., Asst. U. S. Atty., Charleston, S. C., represented the defendant.

HEMPHILL, District Judge.

Plaintiff's motion for preliminary injunction *pendente lite*[1] was heard by the court in Charleston, South Carolina, on May 5, 1977, after due notice to defendant. In this case plaintiff seeks to have the Veterans Administration reinstate him to its active roster of designated fee appraisers, from which he was removed on January 11, 1977 after more than nine (9) years of service to the VA as an appraiser.

At the outset of the hearing, counsel for the defendant, upon inquiry by the court, noted that he did not question the sufficiency of service of process nor the adequacy of the notice of the hearing.

Defendant, however, raised doubts as to the jurisdiction of this court to hear the motion, primarily on the ground that defendant, in removing plaintiff from its list of appraisers, had engaged in a discretionary act, and, therefore, his action is not subject to judicial scrutiny. This court is satisfied, based upon responses from defendant's counsel, that the removal of plaintiff as a designated fee appraiser represents final administrative action by the defendant, and that plaintiff has fully exhausted his administrative remedies.[2] Moreover, plaintiff has alleged in his verified complaint that defendant has failed to follow its published or prescribed administrative rules and regulations in removing plaintiff, and that defendant acted arbitrarily and capriciously. This court concludes that it has jurisdiction over this matter pursuant to the provisions of 5 U.S.C. § 701 *et seq.*[3]

Since the hearing involved only plaintiff's application for preliminary injunctive relief, the sole question to be determined is whether plaintiff is entitled to an injunction *pendente lite*, restoring him now to active status as a VA appraiser pending a final adjudication of the controversy on its merits. Recently, in *Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Co., Inc.,* 550 F.2d 189 (4th

1. Fed.R.Civ.P. 65(a) provides: Injunctions
   (a) Preliminary Injunction.
   (1) Notice. No preliminary injunction shall be issued without notice to the adverse party.
   (2) Consolidation of Hearing with Trial on Merits. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

2. Defendant could suggest, and suggested, no administrative recourse for plaintiff.

3. Plaintiff has also alleged 28 U.S.C. § 1331 as a separate and independent basis of jurisdiction. It would appear from the allegations contained in the complaint that jurisdiction properly lies under this section as well. *See, Taylor v. U. S.,* 385 F.Supp. 1034 (N.D.Ill.1974). (The decision by VA in this case is not a decision of law or fact under 38 U.S.C. § 211. Plaintiff is entitled to due process and his day in court.)

Cir. 1977), the Court of Appeals clearly and unequivocally laid down the requisite showing which a plaintiff must make in this circuit in order to receive preliminary injunctive relief:

> Thus in this circuit the trial court standard for interlocutory injunctive relief is the balance-of-hardship test. . . .
>
> The two most important factors are those of probable irreparable harm to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. 550 F.2d at 196.

Therefore, the question becomes whether plaintiff has met the requirements enunciated in *Blackwelder, supra.* After reviewing the tendered evidence,[4] and listening to arguments by counsel for the parties, this court is fully satisfied that plaintiff has met the *Blackwelder* tests and is entitled to the relief that he seeks.

■ It appears undisputed that Thomas F. Hartnett, age thirty-five, has been in the real estate business in Charleston, South Carolina, since 1961, and a member of the General Assembly from Charleston (and later Charleston and Georgetown) County since 1964. After meeting all qualifications, plaintiff began working as a designated VA appraiser in 1967 and continued with such employment until his termination from active status on January 11, 1977.[5] He appealed to defendant (thus exhausting his administrative remedies), and was denied any further appraisal work from the VA.

The only reason why the VA refuses to employ plaintiff is because he is á member of the General Assembly of South Carolina. The VA also refuses to employ plaintiff to do appraisals in counties which he does not politically represent. This loss of income is costing plaintiff and his family an estimated two thousand and 00/100 ($2,000.00) dollars per month.

The government conceded during questioning from the court that (a) plaintiff has not personally committed any impropriety or undertaken any illegal course of conduct, (b) that plaintiff was qualified professionally to perform competent real estate appraisals, and (c) that plaintiff has not done anything detrimental to the VA, the lender, or the veteran.

The regulation governing the suspension or removal of designated fee appraisers by the Veterans Administration is found at 38 C.F.R. § 36.4341. This regulation, duly promulgated in 1975 by the Veterans Administration under its rule making power as a bureaucracy, provides, *inter alia*, as follows:

> Upon it appearing that an appraiser designated by the Administrator, is not qualified to make appraisals of the type for which appointed, or has engaged in any practice detrimental to the interest of the

---

4. Defendant provided the court with no opposing affidavits nor presented any evidence whatever at the hearing. Plaintiff's complaint was verified and he offered a supporting affidavit which was not controverted as to any material fact.

5. His work was outstanding. In the letter "firing" him the VA wrote:

> December 3, 1976
> Mr. Thomas F. Hartnett
> P. O. Box 221
> Charleston, S. C. 29402
> Dear Mr. Hartnett:
> I am informed that you were recently re-elected to the office of State Senator from Charleston and Georgetown Counties. As you have been advised, DVB Circular No. 25–66–6 dated April 19, 1966, Paragraph 6(2), provides that no fee assignments may be given to an appraiser who holds an appointive or elective position.
> The purpose of this letter is to advise you that as of January 11, 1977, the date your current term of office begins, you will be placed on our inactive list and no further assignments will be made to you.
> During your ten years of service to this office as a fee appraiser you have performed your assignments in an outstanding manner. I commend you for your dedication to our Loan Guaranty Program and extend my best wishes for continued success as you serve your constituents as their elected State Senator.
> Sincerely yours,
> /s/ R. Stedman Sloan, Jr.
> R. STEDMAN SLOAN, JR.
> Director.

veteran, the lender, or the government, the appraiser may be suspended or removed by the Administrator.

Examination of the regulation indicates that a designated fee appraiser may be removed for but two reasons. *First,* that he is not qualified to make appraisals of the type for which appointed; *second,* that he is engaged in some practice which is detrimental to the interest of the veteran, the lender, or the government. The verified complaint herein, and in particular Exhibit "A" attached thereto, together with the affidavit of plaintiff, and the position of the VA at the hearing, make manifestly clear that plaintiff is eminently qualified to make appraisals of the type for which he was appointed.

As to the second ground for removal or suspension, it is also apparent that Mr. Hartnett has not, during the more than nine (9) years which he served as a designated VA appraiser, "engaged in any practice detrimental to the interest of the veteran, the lender, or the government." There is no indication, in the record, to promote even the slightest suspicion that he will do so in the future. There being no evidentiary support indicating otherwise, this court is compelled, pending a final hearing or trial, to so find.

█ Since the removal or suspension of a designated appraiser appears to be governed and controlled by the provisions of 38 C.F.R. § 36.4341, and since defendant has so far failed to make the requisite showing as required therein, this court is persuaded that defendant has failed to follow the provisions of the VA regulation in question; unless defendant can demonstrate otherwise, his actions in removing plaintiff as a designated VA appraiser were arbitrary, capricious, and an abuse of discretion. It is well settled that an administrative agency, such as the Veterans Administration, is bound by its own rules and regulations, and, moreover, it must scrupulously comply with its own rules and regulations. *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Accardi v. Shaughnessy,* 347 U.S. 260, 266–67, 74 S.Ct. 499, 98 L.Ed. 681 (1953); *Electronic Components Corp. of N. C. v. N. L. R. B.,* 546 F.2d 1088 (4th Cir. 1976); *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1970).

Notwithstanding the foregoing analysis, the government contended that a 1966 VA circular [DVB Circular 25–66–6] afforded ample basis for discharge of plaintiff from the active appraisers list for the sole reason that he was elected by vote of the people of Georgetown and Charleston Counties to be one of their Senators.[6] The circular in question provides, *inter alia,* as follows:

(2) Designation of fee appraisers and compliance inspectors will not be made unless the applicant shall have acceptably executed VA Form 26–6684, statement of fee appraisers or compliance inspectors. Also, a designation shall not be made *in those cases* where the applicant holds an appointive or elective position or other employment *which may result* in a conflict of interests between such position or employment and performance as a fee person with the VA, or where embarrassment, adverse public relations, or adverse publicity concerning the applicant or the VA might be expected to result. [DVB Circular 25–66–6, para. 6A(2) (emphasis supplied)].

█ The foregoing circular, which the defendant argued was a "statement of policy" as opposed to a duly promulgated rule or regulation,[7] was offered by the defend-

---

6. It is useful to note that plaintiff only appraised properties for the VA in Charleston, Dorchester and Berkeley Counties.

7. Such as 38 C.F.R. § 36.4341 noted *supra,* which was adopted in 1976. It is well settled that a "statement of policy" such as is herein relied upon by the defendant, does not have any legal efficacy unless properly published in accordance with the provisions of the Adminis-

trative Procedures Act, 5 U.S.C. § 553. *E. g., Hotch v. U. S.,* 212 F.2d 280 (9th Cir. 1954); *City of New York v. Diamond,* 379 F.Supp. 503 (N.D.N.Y.1974); *Kelly v. U. S. Dept. of Interior,* 339 F.Supp. 1095 (E.D.Cal.1972). There has been no showing that the VA circular, DVB 25–66–6, which was issued on April 19, 1966, was ever published in the federal register, and it, therefore, establishes neither a "binding norm" nor is it "finally determinative of the

ant as an interpretative explanation of 38 C.F.R. § 36.4341. This cannot be so, for the VA official who drafted the circular was surely not so clairvoyant as to anticipate, nine years ahead, the regulation supposedly interpreted. The regulation was promulgated August 18, 1975. Plaintiff served eight or nine years *after* the circular was published.

This chronological impediment to plaintiff's argument is a sufficient answer to the issue of the validity, effectiveness, or purpose of the circular. This court finds and holds that plaintiff has met the VA regulations in question (*i. e.*, he is qualified and has engaged in nothing detrimental to the VA, the lender, or the veteran), and, in the absence of any showing whatsoever that plaintiff failed to meet the test of the regulation, the court would not ordinarily inquire further as to the circular. However, it is useful and important to note that upon inquiry by the court, defendant could provide no concrete reason why plaintiff's State Senate position would, *per se*, create a conflict of interest or embarrassment to the VA. It would seem instead that the honesty and integrity of a public-minded citizen elected by the people of his district would be a plus factor arguing for acceptability, as opposed to disqualification, for VA appraisers.[8]

Moreover, it seems particularly inappropriate to accord this particular circular any weight when it was drawn prior to plaintiff's initial acceptance by the VA in 1967. Particularly in view of plaintiff's admitted-

ly outstanding record, it would seem reasonable that the VA would seek men and women possessing the skills and record of achievement of someone such as plaintiff, rather than resurrecting, and according preferred status to, a long-overlooked circular which contradicts, and which appears to exceed the bounds of, a recent regulation.

Counsel for the VA sought to make the point that nationwide "uniformity" was sought by the enforcement of the circular's proscription against office holders who, in the VA's view, apparently have a distinct propensity for engaging in "embarrassing" conflicts of interest, despite plaintiff's impeccable record for nine years. Yet, as demonstrated so far in the instant case, if the unfairness of such a position is shown regarding plaintiff, it is very possibly unfair as applied to many other present and potential VA appraisers. The only uniformity which this court feels it should sanction would be a uniformity of justice to all men and women in dealings with their government.

In any event, defendant failed to produce any evidence whatever that this was one of "those cases" where an elective position "may result in a conflict of interests" between the position and performance for the VA.[9] Thus, even assuming, *arguendo*, that the circular has any vitality or that it was somehow meant to be interpretative of a later regulation, the VA failed entirely to

issues or rights to which it is addressed". *Pacific Gas & Electric Co. v. F. P. C.*, 164 U.S. App.D.C. 371, 506 F.2d 33 (D.C.Cir. 1974).

8. This court cannot help but wonder why the VA would not trust the integrity of a citizen who is elected (and, as here, re-elected) by the citizens who know him best and have expressed their trust in him. And where or when would such discrimination against an elected or appointed public official start or stop? Every notary public, every member of the National Guard, every state and local member of a board or a commission is an appointed official (*e. g.*, members of zoning boards, planning boards, governmental ethics committees, etc.). At least on the basis of the defendant's showing to date, it seems absurd to, on the one hand,

praise a man for outstanding service to the VA over the course of nearly a decade, and, on the other hand, so seriously question his future integrity as to automatically disqualify him from any further service with the VA.

9. It is uncontradicted that beginning in 1967 and continuing every year through 1976, plaintiff, at the request of the VA, executed and delivered to the VA "Veterans Administration Form 26–6684"; by executing this form plaintiff advised the VA yearly that he held an elected office in the South Carolina General Assembly. *See*, para. 19 of the complaint. The execution of this form was required by DVB Circular 25–66–6.

factually support its disqualification of plaintiff.[10]

To return to the *Blackwelder* tests, and in light of the foregoing discussion, this court finds that the issues here are serious and of considerable magnitude to both parties.[11] Moreover, plaintiff has met the balance-of-hardship test enunciated in *Blackwelder* for it is clear that (1) unless the defendant be enjoined, plaintiff will suffer certain and irreparable pecuniary loss,[12] (2) no excessive interim burden will be imposed on the defendant because the VA has commended his performance in his assignments for the VA and for his dedication to the VA Loan Guaranty Program."

It is, therefore,

ORDERED, ADJUDGED, AND DECREED that the defendant Max Cleland, his agents, servants, employees, and attorneys, and all persons in active concert and participation with him, be hereby enjoined, pending the final hearing and determination of this action, from removing or causing plaintiff's name to be removed from the active list of approved VA appraisers for Charleston, Dorchester and Berkeley Counties, and from refusing and failing to provide plaintiff with VA appraisal work as his name comes up in the normal rotation of approved VA appraisers in Charleston, Dorchester and Berkeley Counties; and it is further,

ORDERED that the plaintiff file a good and sufficient bond [13] to be approved by the Clerk of this Court in the amount of one thousand and 00/100 ($1,000.00) dollars so as to indemnify the defendant for any costs or damage he may suffer as a result of the issuance of this temporary injunction in the event that plaintiff does not prevail in this matter on the merits.[14]

AND IT IS SO ORDERED.

---

10. In this connection, see *Pacific Gas & Electric Co. v. Federal Power Comm'n, supra,* where in an interesting analysis of the differing treatment accorded regulations and policy statements by reviewing courts, it was held that:

The agency cannot apply or rely upon a general statement of policy as law because a general statement of policy only announces what the agency seeks to establish as policy. A policy statement announces the agency's tentative intentions for the future. When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued. An agency cannot escape its responsibility to present evidence and reasoning supporting its substantive rules by announcing binding precedent in the form of a general statement of policy. 506 F.2d at 38.

11. In addition to the issues mentioned above, plaintiff has alleged a number of constitutional deprivations.

12. Plaintiff has already lost roughly $8,000.00 in fees; as the government noted in its memorandum of law, any attempt by plaintiff to recover damages is quite probably barred (although that issue is not raised here) by governmental immunity. Moreover, the fees are actually paid by the veteran, the lender, or the builder, and thus they are not readily analogous to back pay.

13. In accordance with Rule 65(c) Federal Rules of Civil Procedure.

14. At the hearing counsel for the defendant agreed as to the amount of this bond suggested by the court, but of course the defendant has the opportunity to later apply for an increase in this bond should he feel he has sufficient grounds therefor.