**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SINGLETON PACKING CORP., Respondent.**

No. 26784.

United States Court of Appeals Fifth Circuit.

Oct. 13, 1969.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Allison W. Brown, Jr., Richard S. Rodin, Lynn D. Poole, Attys., N.L.R.B., Washington, D. C., Harold A. Boire, Director, Region 12, N.L.R.B., Tampa, Fla., for petitioner.

John C. Bierley, J. Danforth Browne, of Macfarlane, Ferguson Allison & Kelly, Tampa, Fla., for respondent.

Before WISDOM and CARSWELL, Circuit Judges, and ROBERTS, District Judge.

WISDOM, Circuit Judge:

In Excelsior Underwear, Inc., 156 N.L.R.B. No. 111 (1966) the National Labor Relations Board held that an employer may be required to submit to a Regional Director the names and addresses of employees eligible to vote in a representation election; the Director makes the

list available to the parties involved in the election. Singleton Packing Corporation's opposition to the *Excelsior* rule and the Company's determination to subject the rule to judicial review generated this case now before the Court. Unfortunately for Singleton, by the time the litigation reached the stage of judicial review both this Court and the United States Supreme Court had approved the rule. Howell Refining Co. v. NLRB, 5 Cir. 1968, 400 F.2d 213, 215–216; NLRB v. Wyman-Gordon Co., 1969, 394 U.S. 759, 89 S.Ct. 1426, 22 L. Ed.2d 709. As a result of Singleton's having made the wrong guess and having pursued a course of action based on that guess, only the remnants of the case remain.

## I.

April 4, 1966, the Union [1] petitioned for an election in a stipulated unit of production and maintenance employees in Singleton's seafood processing plant in Tampa, Florida. The Regional Director of the National Labor Relations Board directed the Company to furnish a list of the names and addresses of all eligible voters in accordance with the Board's then recent decision in *Excelsior Underwear*. Singleton conditioned its compliance with the order upon assurance from the Board that the list would be "used for the union's legitimate purposes only during the current organizational campaign" and a promise of indemnification "against loss arising out of this publication of said list". The Regional Director refused to make such assurances.

May 9, 1966, the Regional Director conducted an election which the Union lost by a vote of 237 to 180 (there were 30 challenged ballots). The Union filed timely objections on two grounds: Singleton's refusal to furnish the *Excelsior* list, and pre-election misconduct by Singleton that interfered with the employees' free choice. After making an

investigation, the Director sustained the Union's charges and recommended to the Board that the election be set aside. On August 24 the Board set aside the election on the first ground and declined to reach the second.

Then, the cycle recommenced. Still no court had ruled on *Excelsior's* validity at the time of the Board's order. Apparently hoping to force the Board to subpoena the list of employees and thus subject *Excelsior* to judicial review, Singleton refused to cooperate "in any way whatsoever in conducting a second election". It refused to allow the balloting to be conducted on its premises, refused to comply with the *Excelsior* order, refused to participate in a pre-election conference, refused to designate election observers, and refused to permit individual notices of the election to be delivered to its employees at the plant. Indeed, the Company strenuously urged its employees to boycott the election. To no one's surprise, therefore, few employees voted in the election on October 13 and those who did voted for the Union. The Union won the election by a vote of 136 to one; there were 14 challenged ballots and one void ballot.

It was now Singleton's turn to object. Singleton contended that the election should be set aside for the following reasons:

(1) The first election was improperly set aside since the Company was not required to comply with the allegedly invalid *Excelsior* rule.

(2) An insufficient number of employees voted in the second election to consider the vote a representative sample of all the employees in the unit.

(3) The Union engaged in pre-election coercion and threats of physical violence and job loss for the employees.

(4) Certain ineligible employees voted in the election.

1. Local 104, Hotel and Restaurant Employees and Bartenders International Union, AFL–CIO.

(5) The election was held in an unsuitable place, where a union rally had been held the night before the election.

(6) The Board should not have held a second election but, instead, should have sought an injunction in a Federal District Court to compel the Company's production of the *Excelsior* list.

(7) The totality of conduct and events set forth above effectively interfered with the fair and proper conduct of the election.

The Regional Director conducted an investigation of these issues and allowed the parties to submit written evidence, but refused to conduct a hearing. He ruled against Singleton on all objections. On February 24, 1967, the Board adopted the Regional Director's report and certified the Union as the bargaining representative of Singleton's employees.

February 28, 1967, the Union requested Singleton to bargain. When Singleton refused, the Union filed an unfair labor practice charge, alleging that the refusal violated § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5) and (1) (1964). In answer to the Regional Director's complaint of March 31, 1967, Singleton admitted its refusal to bargain but contended that the Union had been improperly certified. The Trial Examiner at the unfair labor practice proceeding granted General Counsel's motion for summary judgment, and on August 31, 1967, the Board affirmed the decision, finding that Singleton had violated the Act as charged. The Board now seeks enforcement of its order against Singleton in accordance with § 10(e) of the Act, 29 U.S.C. § 160(e) (1964).

Three issues are presented. (1) Was Singleton bound to observe the *Excelsior* rule? (2) Was the second election representative? (3) Should the Board have accorded Singleton a hearing on its objections to the second election or in the unfair labor practice proceeding?

## II.

■ *Howell Refining Co.*, and *Wyman-Gordon* effectively repel Singleton's attack on the *Excelsior* rule. In *Howell*, we held the *Excelsior* rule to be "a valid exercise of the Board's power to ensure employees a fair and free choice in the selection of their representative". 400 F.2d at 216. *See also* Groendyke Transport, Inc. v. Davis, 5 Cir. 1969, 406 F.2d 1158, 1164. In *Wyman-Gordon*, the four-Justice plurality opinion of the Supreme Court and two dissenting Justices found fault with the Board's promulgation of the *Excelsior* rule. Three other concurring Justices who had found it substantively and procedurally valid joined the plurality in enforcing the rule because the Board had issued a specific order to the employer to submit an *Excelsior* list. Singleton finds itself in the identical situation. The Board correctly set aside the first election for Singleton's refusal to deliver an *Excelsior* list.

## III.

Singleton contends next that the second election conducted by the Board was so ill-attended that its result must be set aside as unrepresentative of the employees. Singleton points out that the first election enjoyed a ninety percent turnout: 447 of 503 eligible voters participated. At the second election, however, only twenty-seven percent (101 of 506 eligible) voted.

In his Report on Objections to the Second Election (later adopted by the Board), the Regional Director found that the second election had been well publicized for the benefit of all the employees and that they had an adequate opportunity to participate in the balloting if they had wanted to do so. He attributed the small turnout to the Company's statements to its employees to

boycott the second election. On September 30 and again on October 7, the Company had issued notices to its employees urging them to "stay away from the election".

We must agree with the Regional Director and the Board. In dealing with a section of the Railway Labor Act, 45 U.S.C. § 152 (1964) that provided for majority determination of representatives, the Supreme Court has said:

> It is to be noted that the words of the section confer the right of determination upon a majority of those eligible to vote, but is silent as to the manner in which that right shall be exercised. Election laws providing for approval of a proposal by a specified majority of an electorate have been generally construed as requiring only the consent of the specified majority of those participating in the election. * * * Those who do not participate "are presumed to assent to the expressed will of the majority of those voting."

■ We see no reason for supposing that [this section] (* * *) was intended to adopt a different rule. If, in addition to participation by a majority of a craft, a vote of the majority of those eligible is necessary for a choice, an indifferent minority could prevent the resolution of a contest, and thwart the purpose of the Act, which is dependent for its operation upon the selection of representatives. There is the added danger that the absence of eligible voters may be due less to their indifference than to coercion by the employer.

Virginian Railway Co. v. System Federation No. 40, 1937, 300 U.S. 515, 560, 57 S.Ct. 592, 605, 81 L.Ed. 789, 806–807 (citations omitted). In applying the principle of *Virginian Railway* to the National Labor Relations Act, this Court has pointed out that like the Railway Labor Act, § 9 does not expressly provide what sort of majority shall control the result of an election. We concluded, however, that "[t]he general rule, in the absence of a clear provision otherwise, is that voters who could have voted in a formal election but do not are considered to assent to the will of the majority of those who do vote". NLRB v. Whittier Mills Co., 5 Cir. 1940, 111 F.2d 474, 477.[2] Although *Whittier Mills* involved an election where a majority of the employees in the unit had voted, its principles should apply to the case before us where the losing party actively encouraged nonparticipation. The Company's conduct here undermines the representation election and certification proceeding which Congress has designated as a means of selecting an exclusive bargaining agent for employees. To void the results of the election would reward such conduct.

■ We need spend no time on Singleton's contention that the Board's proper remedy for its *Excelsior* violation was a subpoena so that Singleton could secure judicial review. It was within the Board's administrative discretion to issue or not to issue a subpoena. *Cf.* NLRB v. British Auto Parts, Inc., C.D.Cal.1967, 266 F.Supp. 368, 374, aff'd, 9 Cir. 1968, 405 F.2d 1182, holding that the Board may use a subpoena or unfair labor practice proceeding to secure the *Excelsior* list. We have spoken before of "the congressional policy of severely circumscribing review of rep-

---

2.  Accord: NLRB v. Deutsch Co., 9 Cir. 1959, 265 F.2d 473, 478–481, cert. denied, 1960, 361 U.S. 963, 80 S.Ct. 592, 4 L.Ed. 2d 544; Standard Lime & Stone Co. v. NLRB, 4 Cir. 1945, 149 F.2d 435, 436–439, cert. denied, 1945, 326 U.S. 723, 66 S.Ct. 28, 90 L.Ed. 429; NLRB v. Central Dispensary & Emergency Hospital, 1944, 79 U.S.App.D.C. 274, 145 F.2d 852, 853–854, cert. denied, 1945, 324 U.S. 847, 65 S.Ct. 684, 89 L.Ed. 1408; NLRB v. National Mineral Co., 7 Cir. 1943, 134 F.2d 424, 426–428, cert. denied, 1943, 320 U.S. 753, 64 S.Ct. 58, 88 L.Ed. 448; New York Handkerchief Manufacturing Co. v. NLRB, 7 Cir. 1940, 114 F.2d 144, 148–149, cert. denied, 1940, 311 U.S. 704, 61 S.Ct. 170, 85 L.Ed. 457; *see* Semi-Steel Casting Co. of St. Louis v. NLRB, 8 Cir. 1947, 160 F.2d 388, 391–392, cert. denied, 1947, 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344.

resentation matters", and reasoned that "it must be assumed that Congress was aware of these obstacles to a challenge of election procedures, and that it intentionally made it difficult for the employer to attack election procedures in order to insure that frivolous complaints were not utilized to bring about a postponement of collective bargaining". Boire v. Miami Herald Publishing Co., 5 Cir. 1965, 343 F.2d 17, 25, 22, cert. denied, 1965, 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70.

## IV.

■■ We deal finally with that "recurring" question before this Court, NLRB v. Crest Leather Manufacturing Corp., 5 Cir. July 22, 1969, 414 F.2d 421: Should the Board have accorded the Company a hearing? There is no statutory requirement of a post-election evidentiary hearing in a representation proceeding. The Board's Rules and Regulations provide a hearing when there are "substantial and material factual issues" which can be resolved only after a hearing. 29 C.F.R. 102.69(c), (e) (1969). This Court has held that this administrative standard "is also the constitutional standard under the due process clause". NLRB v. Smith Industries, Inc., 5 Cir. 1968, 403 F.2d 889, 892. The burden is on the objecting party, however, to present "specific evidence which prima facie would warrant setting aside the election, for it is not up to the Board staff to seek out evidence that would warrant setting aside the election". United States Rubber Co. v. NLRB, 5 Cir. 1967, 373 F.2d 602, 606. There must be " 'specific evidence of specific events from or about specific people' in support of allegations having a basis in law sufficient to overturn the election". NLRB v. Golden Age Beverage Co., 5 Cir. July 7, 1969, 415 F.2d 26, quoting NLRB v. Douglas County Electric Membership Corp., 5 Cir. 1966, 358 F.2d 125, 130. We are reminded of "the wide degree of discretion entrusted to the Board in rep-

resentation matters, as well as our duty to determine only whether the Board's conclusion is reasonably drawn from the evidence submitted and the circumstances surrounding the election". Golden Age Beverage at 33.

Singleton contends that the record is inadequate; that the Board did not have before it sufficient evidence to be able to rule fairly on the Company's objections. Apparently, Singleton would have us lay this deficiency at the Board's door on account of its refusal to conduct a hearing. But we frame the question in this fashion. (1) Would Singleton's evidence, if true, be "sufficient to overturn the election"? Golden Age Beverage at 33; NLRB v. Crest Leather Manufacturing Corp., supra, 414 F.2d, at 423; National Cash Register Co. v. NLRB, 5 Cir. Aug. 20, 1969, 415 F.2d 1012. (2) Is there a substantial and material factual issue concerning this evidence that only a hearing can resolve? Home Town Foods, Inc. v. NLRB, 5 Cir. 1967, 379 F.2d 241, 244.

Since Singleton on appeal does "not attempt to argue" whether the evidence it presented required the Board to set aside the election, we are remitted to its Objections to Conduct Affecting Outcome of Second Election that it presented to the Regional Director. We find three main objections: Union coercion through threats of physical violence and job loss; participation in the election by ineligible voters; and improper location of the polling station. We deal with these in order, gauging their significance in light of Singleton's exhortations that its employees boycott the election.

(1) Union Coercion. We note, first, that the Regional Director did not discredit Singleton's affidavits. Instead, he found that they did not raise a meritorious objection. Consequently, we do not reach the question whether a hearing was required, but only whether the allegations would require a new election. Two employees submitted affi-

davits which, in relevant part, alleged the following.[3] Employee White said that a fellow employee who lived in the same apartment house "tried to get me to go down to vote in the National Labor Relations Board election. She had been after me about this subject several weeks before the election". On another occasion, the same employee told employee White that it "looks like you are for the company" and "acted like she was mad at me". Employee Alfonso stated that a fellow employee had threatened her with loss of her job if the Union won (no witnesses were present), physical violence if she crossed a picket line to be set up after the election (no witnesses were present), and bombing of her house if she didn't vote ("in the hall when the Peelers were going home"). The Regional Director found that there was no evidence that the threats were made by an agent of the Union; that the threats were to require the witnesses to vote, not necessarily for the Union.

■ We are not impressed with this finding. But the question is not the existence of improper conduct with respect to two employees but whether the conduct "created an environment of tension or coercion such as to preclude employees from exercising a free choice. For conduct to warrant setting aside an election, not only must that conduct be coercive, but it must be so related to the election as to have had a probable effect upon the employees' actions at the polls". NLRB v. Zelrich Co., 5 Cir. 1965, 344 F.2d 1011, 1015. We rely not on the absence of agency, Home Town Foods, 379 F.2d, at 244, but on Singleton's failure of proof that the conduct destroyed the atmosphere necessary for free choice in the election. Singleton cannot excuse its failure merely by al-

leging that other incidents occurred which it could not effectively investigate. The Regional Director's investigation was all that it deserved on such a sparse showing. The compelling inference to be drawn from the record is not that pro-Company employees were intimidated but that they stayed home on election day because they heeded the Company's call to boycott the election.

■ (2) Ineligible Voters. Singleton submitted to the Regional Director the names of two individuals. One of these had "stated to Employer that she definitely did not vote on election day, but was told by union adherents that someone signed her name and voted for her". The other voter had allegedly voted although ineligible. Upon examination of the voters' affidavits,[4] the Regional Director found that in fact a ballot had not been cast for the first employee and that the second employee's vote had been challenged and not counted. At Singleton's request, the Director also compared the voters' names with a post-election eligibility list submitted by Singleton. He found that five persons had voted whose names were not on the list. However, in view of the fact that the five were on the eligibility list for the first election where they voted without challenge; that Singleton was repeatedly asked to but refused to furnish an eligibility list; that Singleton was informed that the employees would be voted by affidavit; and that Singleton declined to attend a pre-election conference and failed to designate election observers who could have challenged the five, the Regional Director concluded that the ballots should be held valid and overruled the objection. We do not disturb this conclusion.

---

3. We omit reference to certain incidents alleged in the affidavits because they occurred either after the election or long before the petition for election was filed, and no evidence was adduced to show their effect was present at the time of the election. *See* Golden Age Beverage,

*supra,* 415 F.2d, at 31; Ideal Elec. & Mfg. Co., 134 N.L.R.B. No. 133 (1961).

4. Employees had voted by affidavit since Singleton refused to provide an eligibility list.

■ (3) Election Location. Singleton requested that the election be set aside because of its location. According to Singleton, the Palladium Ballroom was, "as a matter of common and public knowledge", "a public bar and dance hall", and the Union had held a rally there the night previous to the election. Singleton concluded that the requisite laboratory atmosphere for an election has thus been destroyed. Since Singleton presented no evidence on its first contention, we do not find a "substantial and material factual issue" created by the Regional Director's acceptance of the owner's testimony that there was no bar on the premises of the Palladium Ballroom, that no alcoholic beverages were sold there, that it had not been open to the general public since March 1966, that from March to May it had been used for political rallies and campaign headquarters, and that since May it had been used only for the Union meeting and the Board election. Thus, this is a case "which merely 'question[s] the ultimate interpretation placed by the Director upon certain conduct.' N.L.R.B. v. Simplot Co., 322 F.2d 170, 172 (9th Cir. 1963) [and] a hearing is not required". National Cash Register, 415 F.2d, supra, at 1015. The Regional Director found that the purpose of the Union meeting was to acquaint members with the location of the polling place, that there was no evidence presented to show that the election site was inadequate, its location unknown to employees or that a free expression of choice was prevented, and that the location had been selected after an extensive investigation as the most desirable and feasible for the election. Accordingly, he overruled the objection. We find this decision to be within the Board's and its agents' discretion, and supported by the record which contains "only bare unsupported assertions of such effects [to the contrary] by the Company. In this matter we shall not second-guess the Board, which is closely attuned to the election from the time when the petition is first filed, and thus is in a better position to hear and decide questions concerning the fairness of the election process". Golden Age Beverage, 415 F.2d, at 31.

■ Similarly, when we review the foregoing objections in their totality, see Home Town Foods, 379 F.2d, at 244, we cannot conclude that the Regional Director and the Board abused their discretion in refusing to void the second election.[5]

■ Our resolution of these three objections that Singleton construed as requiring a post-election hearing disposes also of Singleton's demand for an evidentiary hearing before the Trial Examiner on the unfair labor practice charge. If no post-election hearing was required, we cannot find a hearing necessary at the unfair labor practice proceeding unless extraordinary circumstances such as newly discovered evidence require a different result. Crest Leather, 414 F.2d, at 423; Douglas County Electric, 358 F.2d, at 129 & n. 10. Singleton presents no such circumstances.

We enforce the order of the Board.

5. Like the Court in *Golden Age Beverage, supra,* we point out that "our decision is in no wise inconsistent with the outflux of recent cases decided by this Court where the Board's order to bargain has been denied enforcement because of the failure to provide the objecting party a hearing on its objections". This case, like *Golden Age Beverage,* "involve[s] objections whose very nature and probable impact upon the employees' free choice are of an entirely different order". Id. 415 F.2d, at 34, n. 6. As factors supporting that conclusion, we point to the one-sidedness of the vote, the poorly supported and insubstantial objections, the failure to show that a material number of employees were influenced by the conduct, and the objecting party's concurrent responsibility.