NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DOBBS HOUSE, INC., Respondent.

No. 78–2513.

United States Court of Appeals,
Fifth Circuit.

March 17, 1980.

Elliott Moore, Deputy Assoc. Gen. Counsel, Marjorie Gofreed, Supervisor, Richard A. Cohen, Atty., N. L. R. B., Washington, D. C., for petitioner.

McKnight & Hudson, Fletcher L. Hudson, Keith A. Warren, Memphis, Tenn., for respondent.

Before AINSWORTH, VANCE and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The National Labor Relations Board (Board) seeks enforcement of its order that Dobbs House, Inc. (Dobbs) bargain collectively with District 146, International Association of Machinists and Aerospace Workers, AFL–CIO (the Union). After an election, the Board certified the Union as the exclusive bargaining representative of an appropriate unit of Dobbs' employees. Dobbs refused to bargain, alleging improper conduct by Union agents, supervisory pressure on behalf ·of the Union, improper disposition of challenged ballots, irregularities in the investigation of the election, and an incomplete record for review by the Board. Finding that Dobbs failed to specify sufficiently the details of the alleged supervisory and Union misconduct to establish a prima facie case, that the Board properly sustained the challenges to the ballots, and that any procedural irregularities constitute harmless error, we enforce the Board's order to bargain.

On July 29, 1976,[1] the Union filed a representation petition with the Board. Dobbs, by letter dated August 18, requested that the petition be dismissed on grounds that supervisory pressure and coercion had tainted the showing of interest. After an administrative investigation, the Regional Director denied Dobbs' request in a letter on September 21.

An election was held on October 1. The Union won with a vote of 59 for the Union, 47 against the Union, and 15 challenged ballots, a number sufficient to affect the result of the election.

Dobbs filed timely objection to the election. After an investigation without a hearing, in which the Regional Director did not obtain affidavits concerning Union misconduct, the Regional Director in a Supplemental Decision on November 30, recommended that all Dobbs' objections be denied and sustained the challenges to 9 votes. The Board granted Dobbs' Request for Review as to the issue of Union misconduct, finding further investigation was warranted on this issue, but denied Dobbs' Request in all other aspects. The Regional Director thereupon obtained three affidavits on the issue of Union misconduct, but again in his Second Supplemental Decision on February 22, 1977, recommended that this objection be denied. This time the Board rejected Dobbs' Request for Review of the Regional Director's Second Supplemental Decision.

Following the Union's certification, Dobbs refused to bargain with the Union. After the Union filed an unfair labor practice charge, the General Counsel issued a complaint alleging that Dobbs' refusal to bargain violated Section 8(a)(5) and (1) of the National Labor Relations Act. Dobbs defended its refusal to bargain on grounds that the election and certification were invalid. The Board granted the General Counsel's motion for summary judgment.

I. Supervisory Pressure.

Dobbs objected to the election on grounds that the Union used supervisors as its

1. All dates are in 1976 unless otherwise specified.

agents to campaign for the Union and to intimidate and coerce employees to support the Union. The evidence in the record to support this objection consists of an affidavit by a former employee, Fred Jackson, and a letter from Dobbs to the Regional Director, dated October 29, 1976. On this petition, Dobbs asks that we hold the alleged supervisory conduct to have rendered the election and certification invalid, or in the alternative, that we hold that an evidentiary hearing on this issue should have been held.

In considering Dobbs' arguments that we hold the election invalid, we honor the well-established rule that because of the wide discretion Congress has entrusted to the Board in its conduct and supervision of elections, considerable weight must be accorded the Board's findings. *N. L. R. B. v. Golden Age Beverage Company*, 415 F.2d 26 (5th Cir. 1969). Whether a court would reach the same conclusion as the Board from the conflicting evidence is immaterial, so long as the Board's finding that the election was fairly conducted is supported by substantial evidence in the record considered as a whole. *Golden Age, supra*, 415 F.2d at 29, citing *N. L. R. B. v. Waterman Steamship Corp.*, 309 U.S. 206, 226, 60 S.Ct. 493, 496, 84 L.Ed. 704, 716 (1940); *Universal Camera Corporation v. N. L. R. B.*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456, 462 (1951). Because Dobbs has failed to present sufficient evidence of supervisory wrongdoing, as discussed below, we hold there is substantial evidence in the record considered as a whole to support the Board's action.

In deciding whether such evidence was sufficient to require a hearing, it must be remembered that there is no statutory requirement for a post-election evidentiary hearing. The Board's Rules and Regulations provide that "if it appears to the Regional Director that substantial and material factual issues exist which, in the exercise of his reasonable discretion, he determines may more appropriately be resolved after a hearing," then the Regional Director shall cause a hearing to be held. 29 C.F.R.

102.69(d) (1979). Courts have added an additional requirement one must meet to be entitled to a hearing, i. e., the burden is on the objecting party "to present 'specific evidence which prima facie would warrant setting aside the election, for it is not up to the Board staff to seek out evidence that would warrant setting aside the election.'" *N. L. R. B. v. Singleton Packing Corp.*, 418 F.2d 275, 280 (5th Cir. 1969), quoting *United States Rubber Co. v. N. L. R. B.*, 373 F.2d 602, 606 (5th Cir. 1967); *N. L. R. B. v. Handy Hardware Wholesale, Inc.*, 542 F.2d 935 (5th Cir. 1976). There must be " 'specific evidence of specific events from or about specific people' in support of allegations having a basis in law sufficient to overturn the election." *Singleton, supra*, 418 F.2d at 280, quoting *Golden Age, supra; Handy Hardware Wholesale, supra.*

The affidavit of Fred Jackson was given on September 9, as part of the administrative investigation into the showing of interest held at the request of Dobbs pursuant to its August 18 letter. Most of the affidavit concerned two conversations with two employees Jackson had in approximately mid-May, concerning activities of a supervisor named Eva Wilson. These activities were too remote from the election to be considered by the Regional Director or the Board. The Board has a rule of thumb that it will not consider evidence of misconduct occurring before the filing of the representation petition. *The Ideal Electric & Manufacturing Company*, 134 N.L.R.B. 1275 (1961). This Court has previously recognized the purpose of the *Ideal Electric* rule and has approved its application. *N. L. R. B. v. Claxton Poultry Co., Inc.*, 581 F.2d 1133 (5th Cir. 1978); *Golden Age, supra*. Accordingly, we cannot fault the Board in failing to find a taint in the election to have resulted from the activities of Wilson described by these two employees which necessarily took place long before the filing of the representation petition.

In his affidavit, Jackson also recounted a meeting he had on or about August 19, after he had left Dobbs, with Laney Rogers, a Union representative. Jack-

son stated that Rogers told him Wilson was his right-hand man with production employees and was in daily contact with Rogers. Without telling any of the details, Rogers told Jackson that Wilson had helped form some meetings. Rogers also told Jackson that Wilson had helped pass out Union cards, again without giving any details.

Jackson's affidavit fails to specify what actions or statements Wilson had done or made which the employees under her supervision could have observed or could have construed as pressure or coercion. Nor does his affidavit specify when most of these activities occurred—making it possible that these activities occurred before the filing of the petition on July 29. If they did occur before July 29, then the *Ideal Electric* rule would make these activities irrelevant. The only fact we know with any certainty is that on August 19, Wilson was in daily contact with Rogers. We are left to surmise whether Wilson on August 19, was still organizing meetings or passing out cards. We are not told what Rogers meant in describing Wilson as his "right hand man." We are left only to conjecture as to whether this meant Wilson was actively campaigning or was only reporting what she had seen. We find that Jackson's affidavit with respect to Wilson failed to give sufficient specificity to its allegations to require a hearing.

Moreover, Dobbs cannot now be heard to complain of the activities of supervisor Eva Wilson. It is clear that by September 10, Dobbs knew of the alleged activities of Wilson as described in Jackson's affidavit, yet the record is devoid of any evidence that Dobbs made any attempt to dissipate Wilson's efforts. This Court has held that when an employer knows of advocacy of a Union by supervisory personnel and takes no steps to dissipate its effect, such advocacy cannot be used as a basis for setting aside the election. *N. L. R. B. v. Lamar Electric Membership Corporation*, 362 F.2d 505 (5th Cir. 1966). To hold otherwise would permit an employer to take advantage of wrongdoing which he had the power to remedy. Accordingly, the election

now under review cannot be annulled for activities of Wilson about which Dobbs knew, but took no action to dissipate.

In his affidavit, Jackson also stated that Rogers told him that two or three unnamed supervisors in the kitchen were "supporting" the Union. Supplementing this evidence, was a letter of October 29, which Dobbs sent the Regional Director, which contained the following information: (1) that employee A told Dobbs that in July or August supervisor X told her she would be approached with a request to sign a Union card, which she should sign, although no one ever approached employee A; (2) that employee A stated that it was common knowledge that supervisor Eva Wilson and supervisor X were urging employees to support the Union and several employees advised A they had been urged to support the Union by these supervisors; (3) that employee A had been told by another unnamed employee that Eva Wilson had stated to this unnamed employee that the Union was needed in order to prevent Dobbs from hiring only whites to fill supervisory positions; (4) that employee B had advised Dobbs that an unnamed employee had knowledge that supervisor Eva Wilson, supervisor X, and supervisor Y had supported the Union during the election campaign; (5) that supervisor X had told Dobbs that in the summer of 1976 a meeting was held with four other supervisors, all of whom expressed support for the Union; and (6) supervisor X stated that subsequent to this meeting, supervisor Z had advised supervisor X that he, Z, was talking in favor of the Union with the employees.

We hold that the letter of October 29, and Jackson's statement that Rogers told him there were two or three unnamed supervisors in the kitchen "supporting" the Union fail to have the required specificity to necessitate a hearing. Dobbs has failed to specify when any of these incidents occurred—with the possible exception of the allegation that employee B had been told by an unnamed employee that Wilson and supervisor X had supported the Union during the "election campaign"—leaving open the

**1258**

possibility that these incidents occurred before the filing of the representation petition; also there is no suggestion that any of these incidents occurred so late that Dobbs could not have dissipated their effect.

While Jackson's affidavit stated that Rogers said certain kitchen supervisors "supported" the Union, while the October 29 letter alleges that employee A stated it was common knowledge that Wilson and supervisor X were urging employees to support the Union, and while employee B had advised Dobbs that an unnamed employee had knowledge that supervisors Wilson, X and Y had supported the Union during the election campaign, nothing in the record indicates the form or manner in which such support was manifested. Nothing discloses whether the support took the form of a permissible expression of personal preference, see *N. L. R. B. v. Alamo Express*, 430 F.2d 1032 (5th Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 584, 27 L.Ed.2d 633 (1971), or whether such support contained the seeds of reprisal and intimidation. See *N. L. R. B. v. WKRG–TV, Inc.*, 470 F.2d 1302, 1316 (5th Cir. 1973) where we upheld an authorization card majority because supervisory activity did not contain potential reprisal, punishment or intimidation. Accordingly, we hold that these items failed to allege specific incidents establishing a *prima facie* case to overturn the election or to require a hearing.

## II. Investigation of Union Coercion.

█ A second objection Dobbs raised against the election was that the Union by and through its agents threatened employees with bodily harm, discharge and other reprisals and campaigned in the voting area while employees were standing in line to vote. The only evidence supporting Dobbs' claim was an October 18 letter sent by Dobbs' counsel to the Regional Director, which contained the names and addresses of five employees Dobbs stated could verify

threats by Union agents. The alleged threat was that the Union would arrange for an investigation by immigration authorities if certain Spanish-surnamed employees voted. The letter also stated that employee Ray Padilla had been approached while in the voting line by two employees who actively supported the Union and who threatened Padilla with unspecified reprisal if he failed to vote for the Union.

The Regional Director as a part of his investigation into these allegations requested Dobbs to bring the named employees to the Regional Director's office in order that their statements could be taken. Dobbs, though, was apparently unable to persuade the employees to go to the Regional Director's office. Dobbs informed the Regional Director that the witnesses refused to cooperate and to accompany Dobbs' counsel to the Regional Director's office. Dobbs requested the Regional Director to come to the plant to interview the witnesses, but the Regional Director refused, alleging that the burden was on Dobbs to furnish witnesses. After this refusal, Dobbs failed to obtain affidavits or statements from any of the named employees. Consequently, the Supplemental Decision of the Regional Director on November 30, was made without any statement by the employees named in the October 18 letter.

The Board, granting Dobbs' Request for Review with respect to its objection concerning Union coercion and campaigning remanded the case to the Regional Director in January, 1977, for further investigation of these issues.[2] In the investigation on remand, the Regional Director went to Dobbs' facility and obtained affidavits from Padilla, from one of the five employees named in the October 18 letter, and from an additional witness. The Regional Director did not take the statements of the four other employees named in the October 18 letter who at this time were no longer working for Dobbs.[3]

---

**2.** The Board did not specify what actions the Regional Director should take in investigating further Union misconduct.

**3.** Letters in both Spanish and English were sent to these four employees to the most current

Padilla in his affidavit denied that any one had threatened him during the campaign or that he had seen Union representatives in the voting line. He had heard rumors that an investigation of Spanish-surnamed employees would be made during the election but could not remember the names of the people who had heard this. He added that the employees often kidded one another about deportation investigations, saying they will make each other "swim back across the river." The employee who was among the original five named in the October 18 letter stated he had received no threats, had heard of no threats of deportation, and saw no campaigning while in the voting line. The third employee, not named in the October 18 letter, stated that he was never threatened with violence or deportation and heard no conversation by Union representatives while in the voting line. This employee stated he had heard three employees in the kitchen say they would not keep their jobs if the Union won because the Union would not want non-English speaking employees. On the basis of these three affidavits, the Regional Director recommended that Dobbs' objections concerning Union coercion be overruled, and the Board agreed.

Dobbs does not ask this Court to invalidate the election on the grounds of Union coercion and campaigning, but rather seeks to invalidate the election on grounds that its due process rights have been violated by the Regional Director's failure to come to its plant in October to take the statements of the five employees named in its October 18 letter. Dobbs contends that the Regional Director, pursuant to 29 C.F.R. § 102.-69(c) [4] had an obligation to investigate the allegations of Union coercion and campaigning, and that an essential element of this investigation would have been the timely interview of the named employees. Because the Regional Director failed to perform his obligation under § 102.69(c), Dobbs argues, four of the five employees were unavailable for interview when the Regional Director did conduct an investigation on remand.

We find that the Regional Director has not failed in his obligations in this case. With respect to the four employees who could not be interviewed, we find that no investigation was required because Dobbs' failed to allege any specific events concerning specific people with respect to the alleged Union threats.[5] Any failure of the Regional Director to interview the four employees who left Dobbs was harmless.

While the specific evidence requirement is most frequently cited in the context of a request for a hearing, see *Handy Hardware*

addresses to Dobbs' knowledge. The results of these letters are as follows: (1) One letter was returned by the Postal Service, marked "Unknown. Return to Sender." (2) One of the addresses supplied by Dobbs was not on the Houston map nor in the Postal Zip Code Directory. Notwithstanding, a letter was dispatched to the address which has not been returned nor has there been any response from addressee. (3) Since there was no response from the other two employees, a Board agent who spoke Spanish and English went to their addresses. The wife of one of the ex-employees stated her husband was not home and would not be home before 5:00 P.M. (4) The agent inquired of the wife about the fourth ex-employee, whose address was also that of the third ex-employee. The wife indicated that the fourth ex-employee lived in a building across the street. An occupant of this building stated that the fourth ex-employee was not in and did not know when he would return.

4. 29 C.F.R. § 102.69(c) reads in pertinent part:

If objections are filed to the conduct of the election or conduct affecting the results of the election, or if the challenged ballots are sufficient in number to affect the results of the election, the regional director shall, consistent with the provisions of § 102.69(d), investigate such objections or challenges, or both.

5. Cf. *Electronic Components Corp. of N. C. v. N. L. R. B.*, 546 F.2d 1088, 1093 (4th Cir. 1976) where the Fourth Circuit stated that the "minimum obligation [of the Regional Director] under § 102.69(c) is to communicate with the witnesses, question them about specified events, and follow up any leads developed." *Electronic Components* is distinguishable from this case since the employer there in its objections met the specificity requirement, and is further distinguishable in that there was no evidence the Regional Director contacted the employer to attempt even a meeting with the witnesses in the Regional Director's office.

*Wholesale, supra, Singleton, supra,* the requirement is also properly applied to the question of whether an investigation is required. In *N. L. R. B. v. Douglas County Electric Membership Corp.,* 358 F.2d 125 (5th Cir. 1966), we stated that the specific evidence requirement was an adjunct to the Board's Rules and Regulations that an objection to the conduct of an election shall "contain a short statement of the reasons therefor." 29 C.F.R. § 102.69(a). More importantly, in *Douglas County* we found no fault with the Regional Director's failure even to contact five named supervisors when the company failed to furnish any information concerning specific incidents or people relating to supervisory activity, even though the company had made serious allegations of supervisory campaigning and support on behalf of the Union in the company's objections to the election. 358 F.2d at 130. Applying the specific evidence requirement with respect to investigations is consistent with the Board's rule that the "party filing objections shall, upon request, promptly furnish to the regional director the evidence available to it to support the objections." 29 C.F.R. § 102.69(a), and with the Board's policy that "[W]hile a Regional Director is obliged to carefully investigate any objective evidence offered by an objecting party to show demonstrable misconduct, he is not charged with ferreting out possible misdeeds when presented with only speculation that improprieties *may* have occurred." *Georgia-Pacific Corporation,* 197 N.L.R.B. 252, n.1 (1972) (emphasis in original). If an employer encounters non-cooperative employees who refuse to give statements, the employer can at least specify in its objections to the election or correspondence to the Regional Director the particular incidents the employer alleges to be misconduct.[6]

With respect to the four employees who were not interviewed on remand, Dobbs' October 18 letter only stated that these employees could verify threats to Spanish-surnamed employees that the Union would arrange for an investigation by immigration authorities if they voted in the election. The letter did not state who made these threats, or to whom the threats were made. Because of the lack of specifics in this letter, the Regional Director was under no obligation to investigate this evidence.

Further reinforcing our conclusion that the Regional Director's refusal to contact the four employees who later left Dobbs was harmless are the statements of the three employees interviewed in the investigation on remand. Padilla, whom Dobbs said would testify that he had been threatened while in the voting line, denied that he had been approached while in the voting line and had heard only vague rumors concerning deportation. The employee interviewed who was among the five listed in the October 18 letter stated he had received no threats of violence or deportation. The third employee interviewed said he had not been threatened with violence or deportation, and could only recount an overheard conversation among three employees who were concerned about their jobs if the Union should win. The results of the investigation on remand also emphasize the good sense of the rule that a party objecting to an election must produce specific information relating to misconduct. Such a rule serves to reduce needless investigations and hearings.

III.  Record before the Board.

■ The Regional Director did not forward to the Board the letter of August 18 from Dobbs, the Jackson affidavit, the letters of October 18 and 29, or any other affidavits, memoranda, notes or correspondence the Regional Director obtained or received during his administrative investigations into the showing of interest or into the election. Dobbs argues that this omission was in violation of 29 C.F.R. §§ 102.68

---

6.  Cf. *Electronic Components, supra,* and *Henderson Trumbull Supply Corp. v. N. L. R. B.,* 501 F.2d 1224 (2nd Cir. 1974). In *Henderson Trumbull,* the Second Circuit held that objections to elections with sufficient specificity, when signed by a party's counsel, are analogous to pleadings and can satisfy the specific evidence requirement.

and 102.69(g) [7] and that the Board's Certification of Representative is thereby rendered invalid. The Board counters that the second sentence of § 102.69(g) indicates that when no hearing is held, the Regional Director need not send his entire investigatory file to the Board and that Dobbs had an opportunity to append what documents it sent to the Regional Director to its Requests for Review. But cf. *Prestolite Wire Division v. N. L. R. B.*, 592 F.2d 302, 305 (6th Cir. 1979).

We need not address the issue of what material constitutes the record when no hearing is held since any omission was harmless error.[8] Twice this Court has held that a failure to include affidavits in the record was harmless when the employer included the contents of such affidavits in

his exceptions to the Regional Director's report. *Southwestern Portland, supra,* 407 F.2d at 134; *Osborn Transportation, supra,* 589 F.2d at 1282. In this case, the pertinent parts of the correspondence submitted by Dobbs to the Regional Director and of Jackson's affidavit were adequately summarized and often quoted verbatim in Dobbs' Request for Review. Because the Board had the pertinent evidence before it supporting Dobbs' objections within Dobbs' Request for Review, any omission from the record was harmless.[9]

IV. Challenged Ballots.

■ Of the 15 challenged ballots, the Regional Director sustained 9 on the ground that their names did not appear on the eligibility list. Having sustained these

---

7. 29 C.F.R. § 102.68 provides:
   102.68 Record; what constitutes, transmission to the Board.
   The record in the proceeding shall consist of: the petition, notice of hearing with affidavit of service thereof, motions, rulings, orders, the stenographic report of the hearing and of any oral argument before the regional director, stipulations, exhibits, documentary evidence, affidavits of service, depositions, and any briefs or other legal memoranda submitted by the parties to the regional director or to the Board, and the decision of the regional director, if any. Immediately upon issuance by the regional director of an order transferring the case to the Board, or upon issuance of an order granting a request for review by the Board, the regional director shall transmit the record to the Board.
   29 C.F.R. § 102.69(g) provides:
   (g) The notice of hearing, motions, rulings, orders, stenographic report of the hearing, stipulations, exceptions, documentary evidence, together with the objections to the conduct of the election or conduct affecting the results of the election, any report on such objections, any report on challenged ballots, exceptions to any such report, any briefs or other legal memoranda submitted by the parties, the decision of the regional director, if any, and the record previously made as described in § 102.68, shall constitute the record in the case. Materials other than those set out above shall not be a part of the record; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a regional director's decision on objections or challenges, or any opposition thereto, may append to its submission to the Board copies

of documents it has timely submitted to the regional director and which were not included in the report or decision. Immediately upon issuance of a report on objections or challenges, or both, upon issuance by the regional director of an order transferring the case to the Board, or upon issuance of an order granting a request for review by the Board, the regional director shall transmit the record to the Board.

8. In *Southwestern Portland Cement Company v. N. L. R. B.*, 407 F.2d 131 (5th Cir. 1969), *cert. denied* 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969), we held that affidavits submitted by a company to the Regional Director in conjunction with an investigation were part of the record under § 102.68 as it then read. We held that such affidavits were "other documents submitted by the parties to the Regional Director." Section 102.68 was later amended and the words "legal memoranda" were substituted for the words "other documents." In *N. L. R. B. v. Osborn Transportation, Inc.*, 589 F.2d 1275 (5th Cir. 1979), we refrained from a holding as to whether affidavits submitted by a party to the Regional Director were "legal memoranda" and thus part of the record pursuant to § 102.68 as amended.

9. The Regional Director's investigatory file was submitted to this Court *in camera.* A review of that file fails to disclose any evidence helpful to Dobbs' objections other than that found in the Jackson affidavit and the October 18 and 29 letters, the pertinent information of which was included in Dobbs' first Request for Review. Any omission of any other part of the investigatory file from the record was therefore harmless.

challenges, the Regional Director found it unnecessary to consider the remaining challenges since they were insufficient in number to affect the results of the election. Dobbs argues that because the Regional Director utilized the incorrect payroll period to determine the eligibility list, these challenges were improper.

In his Decision and Direction of Election, dated September 3, the Regional Director provided "Eligible to vote are those in the unit who were employed during the payroll period ending immediately preceding the date of this Decision . . . ." Dobbs had one payroll period ending on August 27, and another payroll period ending on the date of the Decision and Direction of Election. The Regional Director utilized the payroll period ending August 27 to compile the eligibility list.

Dobbs concedes that the seven employees whose ballots were challenged were not on the August 27 payroll period, but counters that the proper payroll period to determine eligibility was that period ending on September 3, the date of the Decision and Direction of Election.

The Regional Director reasoned that the proper payroll period to determine eligibility was the period preceding the issuance of the Decision and Direction of Election and not the period ending on the date of issuance. We agree that this interpretation comports with the plain meaning of the Decision and Direction of Election and sustain the 9 challenges.

The order of the Board is ENFORCED and Dobbs' Cross-Petition to set aside the order is DENIED.