**ELECTRONIC COMPONENTS CORPORATION OF NORTH CAROLINA, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–2324.

United States Court of Appeals, Fourth Circuit.

Argued June 11, 1976.

Decided Sept. 17, 1976.

William L. Becker, Chicago, Ill. (Dorfman, DeKoven, Cohen & Laner, Chicago, Ill., on brief), for petitioner.

W. Christian Schumann, Atty., N.L.R.B., Washington, D.C. (John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Robert Sewell, Atty., N.L.R.B., Washington, D.C., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

The petition of Electronic Components Corporation of North Carolina (the Company) seeks to set aside an order of the National Labor Relations Board finding that the Company violated § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1), by refusing to bargain with the duly certified bargaining agent of its employees. The Board cross petitions for enforcement of its order.

The Company admits it refused to bargain with the Union (International Brotherhood of Electrical Workers Local 495, AFL–CIO), but contends that the Union was improperly certified and the Company was deprived of due process of law [1] because the Board overruled its objections to the election without following procedures required by the Board's own rules and regulations in certifying the Union as bargaining agent.

We decline to enforce the Board's order because we think the record contains enough specific evidence to require an investigation or hearing by the Regional Director. The election was certified and objections overruled without either an investigation or hearing.

1. We do not reach any due process constitutional question in our decision. *Ashwander v.* *TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1932) (Mr. Justice Brandeis concurring).

On May 23, 1974, the Board held a representation election pursuant to a Stipulation for Certification on Consent Election and the Union won by a substantial margin. The Company filed timely objections to pre-election activity, alleging that the Union:

(1) conducted a campaign of inflammatory racial appeal,

(2) created an atmosphere of fear and coercion by threatening qualified voters during the critical period prior to the election, and

(3) improperly affected the election results by these and other like activities, including the false dissemination of the Company's financial position.

After the objections were filed, the Board's field examiner wrote the Company, asking it to submit copies of published racial propaganda and names of witnesses who would testify to racial statements or to the alleged threats or other events. The field examiner asked specifically for names of persons who made or heard such statements, for dates on which statements were made, and for exact content of the statements.

The Company replied by letter summarizing certain evidence which supported its objections. In the closing paragraph, the Company expressed willingness to make witnesses available and to cooperate in any other way with the investigation of the objections.

The Regional Director, however, did not investigate the objections or the Company's supporting evidence. His report considered only the materials submitted by the Company, and on this basis alone he concluded that the Company had not made out a *prima facie* case for setting aside the election. He recommended the objections be overruled. A three-member panel of the Board (one member dissenting) adopted the recommendations, without a hearing and over the Company's exceptions to the report, and certified the Union on December 16, 1975. At the Company's request, the full Board

reconsidered, but denied, a motion to rescind certification (one member dissenting).

In the meantime, the Union had filed an unfair labor practice charge against the Company for refusing to bargain with the Union after the election. The Board granted summary judgment against the Company and found the Company violated § 8(a)(5) and (1), 29 U.S.C. § 158(a)(5) and (1), of the Act by refusing to bargain with the Union.

■ It is well settled that the rules and regulations of an administrative agency are binding upon it as well as upon the citizen even when the administrative action under review is discretionary in nature. *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1956); *Accardi v. Shaughnessy,* 347 U.S. 260, 266–67, 74 S.Ct. 499, 98 L.Ed. 681 (1953). As the Ninth Circuit pointed out in *NLRB v. Welcome-American Fertilizer Co.,* 443 F.2d 19, 20 (1971),

"[f]ailure to follow such guidelines tends to cause unjust discrimination and deny adequate notice contrary to fundamental concepts of fair play and due process."

And we have required "scrupulous[. . .]" compliance by an agency with its own regulations. *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1970).

■ The Board conducted the election in this case pursuant to a Stipulation for Certification upon Consent Election. The procedure is authorized by § 102.62(b) of the Board's rules and regulations. When the parties consent to an election under this provision, they waive the formal representation hearing which would otherwise be conducted to determine issues relating to questions concerning representation. Section 102.62(b) also provides that any disputes concerning election procedures and conduct affecting the election will be decided by the Board.[2] The regulation incorporates the procedures of § 102.69 which require the Regional Director to make a report and to file this and his recommendations with the Board, which then makes the

---

**2.** Such election is distinguished from a consent election agreement in which the Regional Director has final authority over any election dispute. 29 CFR § 102.62(a).

final determination. Section 102.69(c) directs the Regional Director to conduct an investigation of objections to conduct affecting the results of an election.[3] Section 102.69(d) instructs him to base the report to the Board on an administrative investigation or on a hearing, if there are substantial and material issues of fact which in his discretion he determines are more appropriately resolved by hearing. The rules do not authorize him to dispense with, or to make his report without, any investigation at all. *Georgia-Pacific Corp.*, 197 NLRB 252, n.1 (1972); *Henderson Trumbull Supply Corp. v. NLRB*, 501 F.2d 1224, 1228 (2d Cir. 1974). See *NLRB v. Skelly Oil Co.*, 473 F.2d 1079, 1083 (8th Cir. 1973); *United States Rubber Co. v. NLRB*, 373 F.2d 602, 607 (5th Cir. 1967). We especially note that the dissenting Board member notes that the Regional Director reported without an investigation.

■ The rules do not require a party to submit affidavits or other evidence, but do state that "[t]he party filing objections shall upon request promptly furnish to the regional director the evidence available to it to support the objections." 29 CFR § 102.-69(a). Such evidence must refer to " 'specific evidence of specific events from or about specific people'," *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 33 (5th Cir. 1969), and cannot be "nebulous and declaratory assertions, wholly unspecified . . . ." *Fay v. Douds*, 172 F.2d 720, 725 (2d Cir. 1949).

■ Although we express no opinion on the merits of the evidence supplied to the Board, we are of opinion that at the very least the Company's second objection is supported by evidence specific enough to fulfill the purpose of these requirements, that is, to enable the Regional Director to evaluate the objections and to verify them through the identified witnesses. *Henderson Trumbull Supply Corp. v. NLRB*, 501 F.2d at 1228.

The Company describes four threatening events in support of its second objection—that the Union created an atmosphere of fear and coercion among qualified voters during the critical period prior to the election. First, Hattie Jacobs, who had not signed a union card, although requested so to do by union representatives, was warned, through her daughter, by union organizers who visited her home to pick up her union card, that "something would happen" if she didn't sign. A man driving an automobile which fit the description of an automobile owned by a union organizer, Robert Jackson, a short while later ran Hattie Jacobs off the road. Her car was demolished and she suffered fractured ribs. Second, on March 13th, just after being run off the road, Hattie Jacobs was told by union sympathizer Shirley Fannell, in the Company parking lot, by way of a threat, "You are going to burn." Third, several weeks prior to the election, Carolyn Harrell, an in-plant union organizer, told Joe Annie Leary that she would "lose her job" if she did not sign a union card. Fourth, union agent Johnnie Mae Nixon told employee Fannie Tatum that if employees did not sign union cards, Nixon would close down her day-care center, on which many employees depended for babysitting service while at work. The record shows Nixon had written public letters to the local newspaper in support of the Union.

Although the Board contends that the evidence was not specific enough because the Company did not name any eligible voter other than those just mentioned who was aware of the misconduct, we think this to be a strained interpretation of the facts. In a plant with only 110 people in the bargaining unit consisting of all production and maintenance employees, it is especially unlikely that other voters were not aware that a fellow employee's car was demolished and that she sustained fractured ribs in a

---

3. 29 CFR § 102.69(c) reads in pertinent part:
 . . . If objections are filed to the conduct of the election or conduct affecting the results of the election, or if the challenged ballots are sufficient in number to affect the results of the election, the regional director shall, consistent with the provisions of § 102.69(d), investigate such objections, or challenges, or both.

deliberate assault occurring just after she had been threatened by union organizers.

In any event, the Company's third objection stated that this and other conduct affected the results of the election. The field examiner, by letter, asked for particular specific evidence to support the objections and the Company responded to all of his requests. Contrary to the Board's assertions, he did not ask for the extent of the dissemination or for names of those whose vote was influenced by the conduct. Had the Regional Director conducted an investigation, he could easily have asked the named witnesses whether or not they told other employees about the event. See, e. g., *NLRB v. Skelly Oil Co.,* 473 F.2d 1079, 1080 (8th Cir. 1973); *NLRB v. Staub Cleaners, Inc.,* 357 F.2d 1, 3 (2d Cir. 1966). The field examiner also could have asked about the dissemination of any information. Thus, this omission is not fatal. It did not require Board staff to search out new evidence or to prove the Company's case.

▉▉▉▉ The Board argues that the "Company's response to that request [for specific information] fell far short of establishing a *prima facie* case for setting aside the secret-ballot choice of representatives." But the Board's regulation says the Regional Director "shall investigate" objections to conduct affecting the election. "The requirement of specific evidence is a guide to enable the investigator to discover the facts, not a procedural device that minimizes the impact of facts discovered." *United States Rubber Co. v. NLRB,* 373 F.2d 602, 606–7 (5th Cir. 1967). If the party's facts are credited and if they show grounds for setting aside the election, then a hearing is also necessary. See *NLRB v. Bata Shoe Co.,* 377 F.2d 821, 826 (4th Cir. 1967). As the Board states, the burden upon the party seeking a hearing is a weighty one. It must demonstrate by "specific evidence" that a "substantial and material factual issue" exists over the employees' exercise of a free choice, which could well have affected the election results. *Henderson Trumbull Supply Corp. v. NLRB,* 501 F.2d at 1228–29. But we are of opinion that if an investigation shows the Company's asserted facts are true, there might very well be grounds for setting aside the election.

We do not find it necessary here to address the question of whether a *prima facie* case was shown after investigation because the Regional Director did not investigate, or whether a hearing might be required under the regulations and *Beta Shoe Company,* p. 825, to make crucial factual determinations. For our purpose, it is sufficient to say that the allegations of the deliberate assault on Hattie Jacobs, giving dates, times, and the names of many witnesses are sufficient to require an investigation by the Regional Director, not to mention the other factual allegations. The offer of specific evidence should have been considered by him as a guide to enable him to discover the facts, not, as he did consider it, a procedural device to minimize the impact of facts discovered. *United States Rubber Co.,* pp. 606–7. Indeed, the Board's own decision requires that a Regional Director is "obligated to carefully investigate any objective evidence offered by an objecting party to show demonstrable misconduct." *Georgia Pacific Corp.,* p. 252, n. 1. And we do not charge him with "independently ferreting possible misdeeds when presented with only speculation that improprieties may have occurred." *Ibid.* We think the Regional Director did not "carefully investigate" the "objective evidence offered by" the Company.

The Board's test for whether an atmosphere of fear and coercion exists is whether:

". . . the election was held in a general atmosphere of confusion, violence, and threats of violence, such as might reasonably be expected to generate anxiety and fear of reprisal, to render impossible a rational uncoerced expression of choice as to bargaining representation. It is not material that fear and disorder may have been created by individual employees or non-employees and that their conduct cannot probatively be attributed either to the Employer or to the Union. The significant fact is that such condi-

tions existed and that a free election was thereby rendered impossible." *Al Long, Inc.*, 173 NLRB 447, 448 (1968).

Here, there were not only threats of physical and economic injury, there was the appearance that one of those threats had been carried out and that the others could be. The threat was real. Those who knew the story of Hattie Jacobs might reasonably expect that the same kind of thing could happen to them. Johnnie Mae Nixon, the owner and operator of the day-care center, was in a position to carry out her threat to close the center. Employees might have feared that the Union could have them fired if it gained representative status in the future. Such fears may have affected their votes in the election. The combined effect of these incidents well could have created a general atmosphere of fear and coercion which destroys the laboratory conditions necessary for a fair election. We simply cannot speculate what did happen because the Regional Director did not investigate the claims.

█ Finally, the Board argues that the Regional Director properly investigated the objections when the field examiner in the letter previously mentioned asked for supportive evidence and when he considered each objection. But we are of opinion that such an investigation is not sufficient to satisfy the mandate of § 102.69(c). A request for information is only the initial step. It is not, in itself, an investigation. As previously noted, the requirement of specific evidence is a guide to enable the investigator to discover the facts. The Regional Director then must proceed to determine what the facts are. If diligent investigation should turn up other evidence not specified by the objecting party, this also becomes part of the record. *Henderson Trumbull Supply Corp. v. NLRB*, 501 F.2d at 1228. When an investigation has in fact

been made, the record and the report of the Regional Director contain its results. The rules and regulations then permit the Board to dispose of the objections upon the record if it appears that exceptions to the report do not raise substantial and material issues requiring a hearing.[4] But because the Regional Director did not conduct an investigation, the Board made the final determination in this case on a record which was made up in violation of requirements imposed by its own rules.

The Company adequately answered the request for specific information. The Regional Director made no further request for information and did not object to the evidence submitted. Under such circumstances, in the light of the information in the hands of the Regional Director, his minimum obligation under § 102.69(c) is to communicate with the witnesses, question them about the specified events, and follow up any leads developed. That this is the usual procedure is evident from the cases. See, e. g., *Henderson Trumbull Supply Corp. v. NLRB*, 501 F.2d at 1228; *NLRB v. Americana Nursing Home and Convalescent Center, Inc.*, 459 F.2d 26, 27 (4th Cir. 1972); *NLRB v. Bata Shoe Co.*, 377 F.2d 821, 827 (4th Cir. 1967).

Accordingly, enforcement is denied, and the case is remanded for at least an investigation by the Regional Director and other proceedings not inconsistent with this opinion.[5]

4. 29 CFR § 102.69(f).

5. Although the references to race were altogether out of place, we are unable to say they had an impact on the election. And while we may be somewhat skeptical about the false information about the Company's earnings be-

cause the Company has not stated them, as the dissenting Board member has shown, false statements of like kind have been held to require a hearing. *Henderson Trumbull Supply Corp.*, p. 1229. This last matter, then, should be investigated on remand.