892 F.2d 1041
 133 L.R.R.M. (BNA) 2120
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
F.W. WOOLWORTH CO., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 88-3150.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 6, 1989.
Decided: Dec. 27, 1989.
 
 Francis X. Dee (Linda B. Celauro, I. Michael Kesser, on brief), for petitioner.
 John H. Fawley (Rosemary M. Collyer, General Counsel; Robert E. Allen, Associate General Counsel; Aileen A. Armstrong, Deputy Associate General Counsel; William R. Stewart, Deputy Assistant General Counsel, National Labor Relations Board, on brief), for respondent.
 Before WIDENER and WILKINSON, Circuit Judges, and ROBERT G. DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This case is before us on F.W. Woolworth Company's (the Company) petition for review of the National Labor Relations Board's orders of September 17, 1987, and July 11, 1988, pursuant to 29 U.S.C. §§ 151 and 160(f), and on the Board's cross-application for enforcement of its order of September 17, 1987, pursuant to 29 U.S.C. § 160(e). The National Labor Relations Board's cross-application for enforcement of its order of September 17, 1987, is granted. The September 17, 1987, and July 11, 1988, orders of the National Labor Relations Board are enforced.
 
 
 2
 * On April 21, 1980, the Retail Clerks International Union, Local 552 (affiliated with the United Food and Commercial Workers International Union, AFL-CIO) filed with the Board a representation petition seeking an election among employees of the Woolworth store in Bayamon, Puerto Rico. The election was conducted on July 11, 1980, at the direction of the Board's Regional Director, and Local 552 won. Local 552 received fourteen votes, consisting of thirteen unchallenged ballots and one challenged ballot which was later opened by a Board agent and counted for Local 552. Twelve votes in unchallenged ballots were cast against representation by Local 552. On Friday, July 18, 1980, the Company filed timely objections to the election.
 
 
 3
 On Monday, July 21, a field examiner for the Board sent to the Company a telegram that provided a deadline of Monday, July 28, for submission of evidence and legal memoranda and the scheduling of witnesses' interviews by Woolworth. This telegram was sent to the post office box (not to the street address) for the Company's administrative offices in Puerto Rico, and was received at those administrative offices on Tuesday, July 22. Neither the telegram nor copies of the telegram were sent to local counsel of record for the Company nor to New York counsel of record for the Company, although the telegram came to the attention of local counsel for the Company by Tuesday, July 22.
 
 
 4
 In response to the telegram, local counsel for the Company attempted to contact the field examiner by telephone on Tuesday, July 22, Wednesday, July 23, and Thursday, July 24, but was unsuccessful. Friday, July 25, and Monday, July 28, were legal holidays in Puerto Rico, and the Company's local administrative offices were closed on those days as well as on that weekend but the NLRB offices were not closed on July 28, 1980. Later that day, local counsel for Woolworth submitted to the field examiner preliminary material including a legal memorandum, a statement of evidence, a list of witnesses, and affidavits.
 
 
 5
 On Monday, July 28, at 4:15 p.m., New York counsel for Woolworth received a telephone call from the field examiner in Puerto Rico. The field examiner advised New York counsel that "unless [counsel] had all of [Woolworth's] affidavits, documents, memoranda, etc. in the Regional Office by 5:00 p.m. that night the Objections [counsel] had filed on behalf of Woolworth would be dismissed." New York counsel objected to this proposition, and informed the field examiner and her supervisor that New York counsel would fly to Puerto Rico the next day, and that three witnesses would also be flying from the mainland United States to Puerto Rico and would be available for interviewing by Wednesday, July 30. New York counsel asserted that neither the field examiner nor her supervisor indicated to him that he should do otherwise, and that he understood that the investigation would begin on Wednesday, July 30. On Tuesday, July 29, New York counsel flew to Puerto Rico. Three witnesses also flew there from the mainland United States. On Wednesday, July 30, the field examiner did not call these witnesses for interviewing.
 
 
 6
 On Thursday, July 31, local counsel for Woolworth called the field examiner to inquire as to why the witnesses had not been called the previous day. The field examiner "explained to him she had not read the submission of July 28; that there was some question as to whether she would be assigned the matter; that she was busy on another matter which had priority; and that she would not be able to see the witnesses we had assembled...." Local counsel told the field examiner that he was permitting the witnesses to return to the mainland, and that he would "await her further call." The field examiner did not again contact counsel for Woolworth before the issuance of the Regional Director's order of August 27, 1980.
 
 
 7
 The materials (including affidavits) submitted on Thursday, July 24, by local counsel for Woolworth were considered, an investigation was made, and, by order of August 27, 1980, in Case No. 24-RC-6466, the Board's Regional Director overruled the objections to the election. The Board, in its order of March 2, 1981, denied the Company's request for review of the Regional Director's decision, and the Company's motion for reconsideration of the denial was denied by the Board on March 30, 1981. A certification was issued by the Board to Local 552 on April 15, 1981.
 
 
 8
 On May 19, 1981, the United Food and Commercial Workers International Union, AFL-CIO, Local 568 filed a charge against the Company with the Board, upon which a complaint against the Company for unfair labor practices was issued by the Regional Director in Case No. 24-CA-4514. The complaint alleged that Local 568 was the successor to Local 552 as the result of a merger, and that the Company unlawfully refused to bargain with Local 568. The Company admitted that it refused to bargain with Local 568, but claimed several affirmative defenses. The General Counsel for the Board filed a motion for summary judgment, arguing that all the affirmative defenses raised by the Company had been previously litigated in Case No. 24-RC-6466. On September 30, 1981, a three-member panel of the Board ruled that the issues of merger and successorship had not been previously litigated in Case No. 24-RC-6466, that material issues of fact remained as to these issues, and consequently denied the motion and remanded Case No. 24-CA-4514 to the Regional Director.
 
 
 9
 The Company then filed in Case No. 24-RC-6466 a motion to reopen that case, to rescind the certification of Local 552, and to consolidate Case No. 24-RC-6466 (the representation case) with Case No. 24-CA-4514 (the unfair labor practices case). This motion was denied by the Regional Director on January 29, 1982, and this denial was upheld by the Board on February 11, 1982.
 
 
 10
 On February 17 and 18, 1982, a hearing before an administrative law judge was held in Case No. 24-CA-4514. The hearing was limited to the issues of successorship and merger. The administrative law judge ruled in her June 15, 1982, order that there had been a valid merger of Local 552 and Local 568; that Local 568 was the lawful successor organization to Local 552's rights pursuant to the certification; and that the Company's refusal to bargain with Local 568 was in violation of 29 U.S.C. § 185(a)(5) and (1). The Company filed exceptions to this order with the Board. The Board considered the exceptions, and on February 10, 1984, entered an order in Case No. 24-CA-4514 dismissing the complaint. The Board in that order held that the merger was invalid and that consequently the Company had not violated 29 U.S.C. § 185(a)(5) and (1).
 
 
 11
 Local 568 then filed in the United States Court of Appeals for the District of Columbia Circuit a petition for review of the February 10, 1984, decision. While the Court of Appeals was considering the case, the Supreme Court issued a decision affecting the applicable law. The Court of Appeals therefore on April 21, 1986, remanded the case to the Board for reconsideration. On September 17, 1987, a three-member panel of the Board ruled upon reconsideration to adopt the administrative law judge's decision of June 15, 1982, which found unfair labor practices on the part of the Company and ordered bargaining with Local 568.
 
 
 12
 On October 29, 1987, a bargaining demand was made upon the Company by the Federacion Americana de Empleados de Puerto Rico (American Federation of Public Employees of Puerto Rico), Local 481. Because of this demand by Local 481 instead of Local 568, on January 11, 1988, the Company moved to reopen this case and filed a motion for reconsideration of the Board's order of September 17, 1987. This motion was denied by the Board on July 11, 1988. On August 15, 1988, the Company filed the instant petition for review of the Board's orders of September 17, 1987, and July 11, 1988. On September 16, 1988, the Board filed the instant cross-application for enforcement of its order of September 17, 1987.
 
 II
 
 13
 The Board's September 17, 1987, order found the certification of Local 568 valid. In relation to the appropriateness of the initial election held on July 11, 1980, the Company charges that the Regional Director's decision conduct was improper because: he established an arbitrary deadline for the submission of evidence; he refused to extend the deadline; he failed to conduct a full and complete investigation; and he failed to hold a hearing on the Company's objections.
 
 
 14
 * In connection with the five-day deadline, the Board's regulations in effect in July 1980 required the Company to submit its objections to the Regional Director within five days of the election. 29 C.F.R. § 102.69(a) (1980). The regulations also stated that "[t]he party filing objections shall, upon request, promptly furnish to the regional director the evidence available to it to support the objections." Id. On the basis of this regulation, the Company claims that the Regional Director arbitrarily established the July 28, 1980, deadline for the submission of evidence. We do not agree.
 
 
 15
 The Board has described the regulations then in effect as follows:
 
 
 16
 The scheme of our objections procedure allows the losing party 5 working days after the results are tallied in which to discover the possibility of serious misconduct which might warrant setting the election aside and file objections. The objecting party is given a further limited period of time in which to complete its private investigation of that alleged misconduct and promptly turn results over to the Regional Director, who then investigates and takes appropriate action as expeditiously as thoroughness allows.
 
 
 17
 Burns Int'l Security Serv., Inc., 256 NLRB 959 (1981) (emphasis added). On September 15, 1981, the Board revised this regulation and made it mandatory for the objecting party to file its evidence within five days of filing their initial objections, or within such extra time as the Regional Director may allow. 29 C.F.R. § 102.69(a) (1982). When the Board revised this regulation, it stated that the five day time limit for filing additional evidence "reflect[ed] existing practice." 46 Fed.Reg. 45, 922 (1981). Given the regulations and policies of the NLRB in effect in July 1980, the Regional Director did not act arbitrarily when he set the Monday, July 28, deadline.*
 
 
 18
 The Regional Director's actions were in full compliance with the existing practice of the Board. He determined that five days was a necessary "limited period of time," Burns, 256 NLRB 957, to insure that the Company "promptly" furnished its evidence to support its objections. 29 C.F.R. § 102.69(a) (1980). In addition, counsel for the Company admitted that he was "familiar with the Rules and Regulations of the Board, and its Procedures." Therefore, when the Company submitted on July 18, 1980, its objections to the election of July 11, 1980, the Company should have expected to have only five additional working days in which to promptly furnish additional evidence which was July 28, 1980.
 
 
 19
 We are not persuaded that the Regional Director abused his discretion when he did not extend the time period for the Company to provide its evidence. See Boston Insulated Wire & Cable Sys. Inc., 703 F.2d 876, 879 (5th Cir.1983) (Regional Director's decision whether to grant extension of time governed by abuse of discretion standard). The Company argues that our decision on this issue is controlled by NLRB v. Mrs. Weaver's Salads, 439 F.2d 1116 (6th Cir.1971). In Mrs. Weaver's Salads, the court held that the Regional Director abused his discretion when he refused to extend the deadline for the employer to submit evidence which had resulted in the employer having no opportunity to present any evidence relative to its objections to the election. 430 F.2d at 1117. The present case is markedly different. The Company did in fact submit evidence and the Regional Director considered this evidence when he made his investigation. Furthermore, in the eight years that have passed since these events occurred, the Company has not directed our attention to any evidence that was not considered by the Regional Director that would have led to a different result. While we do not condone the actions of the Regional Director in this case, we find that the Company has failed to show any prejudice that has resulted from his refusal to extend the deadline. See Tuf-Flex Glass v. NLRB, 715 F.2d 291, 297 (7th Cir.1983); NLRB v. Health Tex Division/San Francisco, 566 F.2d 1367, 1371 (9th Cir.), cert. denied, 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978). Under the circumstances of this case, there is no showing of an abuse of discretion meriting a reopening of the case.
 
 B
 
 20
 The Company further argues that Local 552's certification was invalid because the Regional Director failed to conduct a proper investigation of the Company's election objections. The Board's regulations then in effect provided that "[i]f objections are filed to the conduct of the election or conduct affecting the results of the election ... the regional director shall, consistent with the provisions of § 102.69(d), investigate such objections or challenges, or both." 29 C.F.R. § 102.69(c) (1980). Section 102.69(d) gave the Regional Director the option of conducting an administrative investigation or, if material factual issues existed, a hearing. 29 C.F.R. § 102.69(d) (1980). We find that the Regional Director adequately complied with the Board's regulations in this case.
 
 
 21
 In Electronic Components Corp. v. NLRB, 546 F.2d 1088 (4th Cir.1976), this Court outlined the specific obligations of the Regional Director under section 102.69(c) and (d). First, the Regional Director is "obligated to carefully investigate any objective evidence offered by an objecting party to show demonstrable misconduct." Id. at 1092. This objective evidence must refer to "specific evidence of specific events from or about specific people." Id. at 1091. See also NLRB v. Dobbs House, Inc., 613 F.2d 1254, 1259 (5th Cir.1980). In addition, the Regional Director is not charged with "independently ferreting possible misdeeds when presented with only speculation that improprieties may have occurred." Electronic Components, 546 F.2d at 1092. See also Dobbs House, 613 F.2d at 1260. In Electronic Components, this Court found that the Regional Director fell short of this obligation when he failed to investigate the Company's specific objections and its supporting evidence and we refused to enforce the Board's order.
 
 
 22
 In Electronic Components, this Court remanded the case to the Regional Director because the objections were supported by sufficient specific evidence that the union had "created an atmosphere of fear and coercion among qualified voters during the critical period prior to the election." 546 F.2d at 1091. The Company's objections showed that one voter was threatened at her home and then her car was run off the road, causing it to be demolished. The voter suffered fractured ribs in the accident. Id. Later, this same voter was told that "she was going to burn." Id. Another voter was told that she would lose her job if she did not sign a union card. Id. Finally, a union agent told another employee that if other employees did not sign union cards, the union agent would close down this employee's day care center. Many of that Company's employees relied on this day care center for baby-sitting service while at work. Id.
 
 
 23
 This Company argues that in the present case, as in Electronic Components, the Regional Director failed to properly investigate the Company's objections. The Company's affidavits and materials alleged that a Company supervisor visited the home of at least one employee while traveling with a union organizer urging the employee to vote for the union (the supervisor was discharged). There was one ballot that may have contained writing on the back which may have voided it. A union organizer, in the presence of employees, poured a drink on the manager of the Woolworth store. Another organizer stationed herself at the entrance to the polling place and "voicefully and energetically commanded employees" to vote for the union. Finally, a plate with a partially burned candle and some coins were found, which was a claimed sign of witchcraft and voodoo.
 
 
 24
 We find that the submitted evidence falls short of that which created an "atmosphere of fear and coercion" in Electronic Components. Here, the Regional Director did investigate the objections presented. During the course of time since the election and the various hearings since then there has been no further proffer nor any indication that the results would have been different had a further investigation been conducted. Because the Company's evidence lacked the strong atmosphere of fear and coercion present in Electronic Components, the Regional Director was not required to communicate with witnesses and follow up leads to any greater extent than he did in his investigation. We recognize that the scope of the Regional Director's investigation was not equivalent with regard to each of the Company's objections. This variance, however, was proper because we do not charge him with "independently ferreting possible misdeeds when presented with only speculation that improprieties may have occurred." Electronic Components, 546 F.2d at 1092.
 
 C
 
 25
 The Company's next contention is that an evidentiary hearing should have been held. A party objecting to a Board supervised election is entitled to a hearing on its objections. " '[W]here there is a substantial and material issue of fact relating to the validity of a representation election' an evidentiary hearing should be accorded the objecting party." NLRB v. Methodist Home, 596 F.2d 1173, 1178 (4th Cir.1979) (quoting NLRB v. Bota Shoe Co., 377 F.2d 821, 825 (4th Cir.), cert. denied, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). The objecting party is only entitled to a hearing, though, if it proffers evidence that, if true, would make a prima facie case for setting aside the election. Methodist Home, 596 F.2d at 1178. This proffer must not be conclusory or indefinite but must relate to "specific evidence of specific events from or about specific people." Id. "Of course, an evidentiary hearing is not required where, if all the facts contended for by the objecting party were credited, no ground is shown which would warrant setting aside the election." Id. Finally, the party seeking a hearing must do more than merely question the Regional Director's interpretation of the facts. Methodist Home, 596 F.2d at 1178. After applying these standards to each of the Company's nine election objections, we conclude that the Regional Director acted reasonably when he dismissed the Company's objections without an evidentiary hearing.
 
 
 26
 In its first objection, the Company claimed that employees were misled because the election ballot contained an improper name for Local 552. The ballot identified the union as the "Retail Clerks Union, Local 552, AFL-CIO, affiliated with the United Food and Commercial Workers International Union." In addition, all letters sent by Local 552 to the Company's employees prior to the election contained the same designation.
 
 
 27
 Prior to the election, the Retail Clerks Union had already merged on the national level with the Amalgamated Meat Cutters to form the United Food and Commercial Workers International Union. The two unions intended to finalize their merger in Puerto Rico at the end of July 1980. Given this impending merger, the ballot designation identifying both the Retail Clerks Union and the United Food and Commercial Workers International Union was a reasonable way for Local 552 to identify itself at the time of the election. We agree with the Regional Director that the name appearing on the ballot accurately reflected the intended collective bargaining agent.
 
 
 28
 The Company's second objection alleged that a ballot with the initials of an employee written on it was erroneously included in the election total. The Board has a well established policy of invalidating ballots containing marks that might subsequently identify the voter. See Sioux Prods., Inc. v. NLRB, 703 F.2d 1010, 1016 (7th Cir.1983); NLRB v. A.G. Parrott Co., 630 F.2d 212, 213 (4th Cir.1980). In the present case, however, the Regional Director's investigation revealed that none of the ballots contained any markings. The Company's objection only questions the Regional Director's interpretation of the fact that no ballots contained any markings. A mere questioning of the Regional Director's determination that no marks appeared on the ballots does not require an evidentiary hearing. Methodist Home, 596 F.2d at 1178.
 
 
 29
 The Company also argues that the Regional Director's in camera inspection of the election ballots violated its due process rights. In A.G. Parrott, the Board agent removed a ballot with a signature on it from the "No" pile. Because the parties knew it was a "No" ballot, the agent conducted an in camera review of the ballot so the employee's name would not be revealed. The Court concluded that "[s]ince the ballot, depending on whether it is counted or not, is decisive of the outcome, we are of the persuasion that the election should not be deemed to have been regularly conducted." 630 F.2d at 215. In the present case, however, if the allegedly defective ballot was not counted, it would have had no effect on the outcome of the election. Therefore, even accepting the Company's contention, no prima facie case for overturning the election was presented.
 
 
 30
 In its third objection, the Company claimed that the union used a personnel supervisor, Marilyn Rivera, in its campaign. Specifically, the Company alleged that Rivera visited the homes of employees and that a store manager saw her ride in the cars of union officials. Evidence of pro-union supervisory activity, however, is not a per se cause for invalidating an election. NLRB v. Manufacturer's Packaging Co., 645 F.2d 223, 226 (4th Cir.1981). Rather, the "critical inquiry is whether the supervisors' pro-union activities prevented employees from freely effectuating their collective choice." Id. Further, an election should be set aside "only when the coercive impact is clear and an employer, aware of the improper activity, has made a full and sincere effort at disrupting that impact." NLRB v. Columbia Cable TV Co., Inc., 856 F.2d 636, 639 (4th Cir.1988). The Company's evidence fails to state a prima facie case and, moreover, fails to meet the requisite specificity.
 
 
 31
 The Company has presented no evidence that Rivera was campaigning on behalf of the union and that her activities "prevented" the employees from making a free choice. The Company's allegations, if taken as true, only show contact by Rivera with union officials and employees. The evidence does not demonstrate any adverse effect caused by such contact. Furthermore, the Company has not met its burden of specificity. Methodist Home, 596 F.2d at 1178. The Company's evidence does not show when these alleged contacts occurred, who instigated them, or what their purpose was.
 
 
 32
 The Company's fourth objection charged that Jose Pabon, a union agent, restrained and coerced employees of the Company when he poured fruit drink on the store manager. A union election will only be set aside as a result of such an action if specific evidence shows that the violence or threats of violence materially affected the election results. NLRB v. Herbert Halperin Distrb. Corp., 826 F.2d 287, 290 (4th Cir.1987). In the present case, the Regional Director accepted the Company's allegations as true. Even assuming that Pabon's actions were intentional, there still was no specific evidence that this event materially affected the election results. Three employees viewed the event and none of them indicated that it affected their vote or caused them to fear reprisals; therefore, the Company has failed to state a prima facie case for setting aside the election.
 
 
 33
 In addition, this Court's decision in Methodist Home is not dispositive of this objection. In Methodist Home, the Regional Director acted without an evidentiary hearing even though the parties presented disputed evidence involving threats of violence that, if true, would have materially affected the election. 596 F.2d at 1181. In the present case, there was no disputed factual issue. The Regional Director assumed that Pabon intentionally spilled the drink on the manager, but that his action did not create an atmosphere of fear and intimidation or affect the election results. In relation to this objection, there is no disputed issue of fact nor is there a prima facie case.
 
 
 34
 The Company's fifth objection concerned Arlene Cintron, an employee of the Company and a strong union supporter. The Company alleged that she engaged in improper electioneering at the entrance to the polls. Although the evidence was not clear that Cintron was a union agent, the Regional Director assumed that she was. See Herbert Halperin, 826 F.2d at 291 ("[t]he final inquiry is always whether the amount of association between the union and the [employees] is significant enough to justify charging the union with the conduct"). Even after assuming the accuracy of the Company's evidence, the Company still failed to state a prima facie case for overturning the election.
 
 
 35
 In Milchem, Inc., 170 NLRB 362 (1968), the Board established its rule governing unlawful electioneering. An election will be set aside if there are "prolonged conversations between representatives of any party to the election and voters waiting to cast ballots ... without inquiry into the nature of the conversation." Milchem, 170 NLRB at 362. This rule covers conversations in the polling area. Id. "In all other situations, where the electioneering occurs at or near the polls, the Board makes a judgment, based on all the facts and circumstances, whether the electioneering substantially impaired the exercise of free choice so as to require the holding of a new election." Glacier Packing Co., 210 NLRB 571, 573 n. 5 (1974). The Company's evidence did not show that Cintron engaged in any "prolonged" conversations with any employees, or that she was within the polling area; therefore the Milchem rule does not apply. In addition, the Company's evidence did not demonstrate that Cintron's activities substantially impaired any employee's freedom of choice. Furthermore, since the Regional Director accepted the Company's version of the evidence, no disputed issue of fact that required a hearing was presented.
 
 
 36
 The Company's sixth objection charged that two store managers found a plate containing a partially burnt candle and some coins. The Company alleged that this was evidence of witchcraft used by the union to intimidate employees. This evidence did not state a prima facie case for overturning the election as the Company failed to proffer any evidence regarding when or where these objects were found, or whether they had any effect on the election. Herbert Halperin, 826 F.2d at 290. In addition, the Company proffered no evidence linking the union to the alleged acts of witchcraft. The Company was not entitled to a hearing without presenting evidence connecting the union to these activities. NLRB v. St. Mary's Home, Inc., 690 F.2d 1062, 1070 (4th Cir.1982).
 
 
 37
 The Company's last three objections failed to state a prima facie case as they were too conclusory and indefinite. See Methodist Home, 596 F.2d at 1178. The Company alleged that the union offered bribes and rewards to employees, intimidated an employee so that she was afraid to vote, and knowingly made false statements about Woolworth. The Company failed to provide specific information regarding what union agent committed these acts or how the union was connected to them. Without some indication of a connection between the union and these activities and a possible relation to the result, the Regional Director was not required to conduct a hearing. St. Mary's Home, 690 F.2d at 1070.
 
 
 38
 We find that due process of law and the rules and regulations of the Board were not violated when the Regional Director ruled on the Company's objections without a hearing. The evidence proffered in support of several of the Company's objections failed to create a disputed issue of fact or was too conclusory or indefinite. The evidence proffered in support of the other objections failed to state a prima facie case for overturning the election. For these reasons, the Company's proffer was not sufficient to meet the threshold requirements of Methodist Home and no hearing was required.
 
 III
 
 39
 The Company next argues that we should set aside the Board's finding that Local 568 is the lawful successor to Local 552 through a valid merger, because this finding is not supported by substantial evidence. Under the National Labor Relations Act, a "reorganized union may legitimately claim to succeed as the employee's duly selected bargaining representative, and in that case, retain a legitimate interest in continuing to bargain collectively with the employer." NLRB v. Financial Inst. Employees, Local 1182, 475 U.S. 192, 203, 106 S.Ct. 1007, 1013, 89 L.Ed.2d 151, 161 (1986). As long as the following two conditions are met, the Board permits unions to change their affiliation or to merge without "affect[ing] the union's status as the employees' bargaining representative, and the employer [is] obligated to continue bargaining with the reorganized union." First, the union members must be given adequate opportunity to vote, including notice to the union's members, opportunity to discuss the election, and assurance of a secret ballot. Second, there must be substantial continuity between the pre-affiliation and post-affiliation union. Financial Inst. Employees, 475 U.S. at 199-200, 106 S.Ct. at 1011-12, 89 L.Ed.2d at 158-59. The Company does not dispute the continuity between Local 552 and Local 568; rather, the Company asserts that the merger was invalid because not all persons who voted for representation by Local 552 were aware at the time of voting that the merger between Local 552 and Local 568 was pending.
 
 
 40
 In February 1982, an administrative law judge conducted two days of hearings on the issue of the merger between Local 552 and Local 568. The ALJ found the merger to be valid. In addition, she found that the Company had engaged in unfair labor practices and ordered the Company to bargain with Local 568. On September 17, 1987, the Board affirmed the ALJ's rulings, findings, and conclusions and adopted her recommended order. These factual determinations by the Board must be upheld on appeal if supported by substantial evidence. 29 U.S.C. § 160(e); see also NLRB v. Insulfab Plastics, Inc., 789 F.2d 961, 966 (1st Cir.1986); St. Vincent Hospital v. NLRB, 621 F.2d 1054, 1057 (10th Cir.1980); Retail Store Employees Union, Local 428 v. NLRB, 528 F.2d 1225, 1227 (9th Cir.1975).
 
 
 41
 The Board found the testimony of two Local 552 agents to be trustworthy. These agents testified that the merger was discussed at two different organizational meetings. In addition, the Board found incontrovertible evidence that Local 552 distributed notices of the merger meeting to its membership and posted these notices in places where Woolworth employees would observe them. Furthermore, two prominent articles in a widely distributed newspaper announced and explained the merger. We find that the Board's factual determination that the Company's employees were told of the merger is supported by substantial evidence, and the merger of Local 552 and Local 568 was conducted with sufficient due process safeguards.
 
 IV
 
 42
 The Company's final argument concerns the Board's July 11, 1988, denial of the Company's motion to reopen and supplement the record in Case No. 24-CA-4514 (the unfair labor practices case), decided September 17, 1987. The Board's regulations provide that a record may be reopened if a party presents newly discovered evidence that, if adduced and credited, "would provide a different result." 29 C.F.R. § 102.48(d)(1) (1988). Relying on this regulation, the Company seeks to have the record regarding the successorship of Local 568 reopened because of the bargaining demand made by Local 481 subsequent to the Board's September 17, 1987, order. The Board refused to reopen the case.
 
 
 43
 The newly discovered evidence proffered by the Company arose in connection with a bargaining demand by Local 481. All the evidence regarding Local 481's bargaining demand only addresses the issue of how and whether Local 481 is the lawful successor to Local 568 which is not in any way an issue in the case sought to be reopened. What this case determined was that Local 568 was the lawful successor of Local 552; therefore, Local 481's bargaining demand has nothing to do with this dispute. Moreover, enforcement of the Board's order requiring the Company to bargain with Local 568 does not place the Company, as it contends, in a "serious dilemma." As the Board stated when it denied the Company's motion to reopen, questions as to successorship of Local 568 allegedly by Local 481 must be brought in proceedings addressed to that issue. The question of the validity of Local 481's bargaining demand does not excuse the Company from complying with the Board's order to bargain with Local 568. See NLRB v. Union Carbide, Inc., 423 F.2d 231, 235-36 (1st Cir.1970) (company that had been ordered to bargain with certified union could not be excused by doubts as to the identity of the union); cf. NLRB v. Great Western Coca-Cola Bottling Co., 740 F.2d 398, 406 (5th Cir.1984) ("[a]llegations of impossibility of compliance have not prevented courts from enforcing Board orders against employers who have discontinued their business operations"). We agree with the Board's determination that the validity of Local 481's bargaining demand "is a matter for the compliance stage of this proceeding which provides an appropriate forum for the determination (through a hearing if necessary) of whether there is a lawful successor to Local 568."
 
 V
 
 44
 Having considered and rejected each of the Company's allegations concerning the validity of the Board's orders, we determine that they should be enforced. Accordingly, the Board's orders of September 17, 1987, and July 11, 1988, are ENFORCED.
 
 
 
 *
 Consistent with the NLRB's existing practice, the Regional Director set the deadline on Monday, July 28, rather than Friday, July 25, to account for the holiday on July 25, when the Board's offices were closed. See 29 C.F.R. § 102.114(a) (1980)