**FINCASTLE MINING, INC.,
et al., Plaintiffs,**

**v.**

**Bruce BABBIT, et al., Defendants.**

**Civ. A. No. 93–0165–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Dec. 8, 1993.

Wade W. Massie, Monroe Jamison, Jr., Abingdon, VA, for plaintiffs.

Mark Siegel, OSM, Knoxville, TN, Zane B. Scott, Office, Atty. Gen., Big Stone Gap, VA, for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This matter is before the Court on plaintiff's, Fincastle Mining, Inc. ("Fincastle"), motion for a permanent injunction and declaratory relief. Briefs were submitted by both parties and the Court heard arguments on the merits of the opposing positions. The parties have stipulated that this Court has jurisdiction, in that there was a final agency decision by the Department of the Interior. 30 U.S.C. § 1276(a). This Court has further jurisdiction under 28 U.S.C. § 1332.

## FACTS

Fincastle is engaged in the business of mining coal in Virginia. Bruce Babbitt is Secretary of the United States Department of Interior ("Secretary"), which, through the Office of Surface Mining Reclamation and Enforcement ("OSM"), administers the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. §§ 1201–1328, and promulgates regulations governing surface coal mining. The Commonwealth of Virginia, through its Department of Mines, Minerals and Energy ("DMME") and Division of Mine Land Reclamation ("DMLR"), obtained federal approval in 1981 as the primary regulatory authority and issuer of permits for surface coal mining in this state, with the Secretary, through OSM, retaining certain oversight authority.

In 1979 Hobbs Brothers Coal Company, Inc. ("Hobbs") began mining on a leased tract of land adjacent to a tract leased by Fincastle. Ten years later in 1989 Hobbs approached Fincastle concerning extending Hobbs' operation into the coal on Fincastle's tract. Hobbs had constructed portals on its own tract which allowed it access to Fincastle's coal. Fincastle, on the other hand, lacked a portal by which to access its own coal and had no permit on which to mine.

Since it was not feasible to mine the coal itself, Fincastle entered into an agreement with Hobbs by which Hobbs would use its existing portals to access and mine Fincastle's coal. The coal mined from Fincastle's lease was delivered to a processing plant owned by Koch Carbon, Fincastle's parent company. Fincastle also provided refuse areas for rock and refuse from the coal mined on Fincastle's lease. Fincastle paid a flat price for the coal delivered to Fincastle from its lease.

In May of 1991 DMLR informed Hobbs that pursuant to a change in Virginia law, the amount of Hobbs bond required to be paid to the Coal Surface Mining Reclamation Fund of Virginia had been increased by thirty thousand dollars.[1] Hobbs failed to provide the additional bond and was cited for its violation by DMLR. On August 8, 1992 DMLR forfeited Hobbs' bond and revoked its permit. Virginia did not make any determination linking Fincastle to Hobbs on the basis of this state violation.

On September 28, 1993 OSM informed Fincastle that it owned or controlled Hobbs and was therefore blocked from obtaining any permits until Fincastle abated Hobbs' state violation. This ownership "link" was placed in the national computerized database, the Applicant Violator System ("AVS"), preventing Fincastle from obtaining mining permits. Fincastle attempted to rebut the presumption of "ownership or control" of Hobbs but failed to do so. Fincastle then sought relief from this Court.

Fincastle filed a complaint on October 18, 1993 asking this Court to grant relief on three separate grounds. In Count I Fincastle requested a declaratory judgement to the effect that OSM is exceeding its lawful authority in its use of the AVS and that OSM be enjoined from continuing this unlawful activity. In Count II Fincastle appealed the

---

1. Pursuant to Va.Code Ann. § 45.1–270.3 (Michie 1993) the minimum bond required for underground mining operations was raised from $10,000 to $40,000. It was this $30,000 spread which Hobbs failed to provide.

determination of "ownership and control" made by OSM. Finally, in Count III, Fincastle requested a stay of all proceedings pending the outcome of this matter.

## ANALYSIS

■ This Court is faced with what appears to be a matter of first impression. The plaintiff is not challenging the rulemaking authority of OSM nor are they challenging the constitutionality of the AVS system. The issue before the Court is whether OSM violated its statutory and regulatory authority in its use and implementation of the AVS system in this case. Because the Court finds that OSM did exceed its authority, the issues raised in Counts II and III are moot and need not be addressed.

To aid in understanding the issues before the Court it is helpful to outline the procedure followed for evaluating permit applications under § 510(c) of SMCRA, 30 U.S.C. § 1260(c). The primary resource available to regulatory authorities for evaluating permit applications is the AVS. When queried, the AVS makes a recommendation to issue, deny, or condition a permit based on whether the system discovers an ownership or control link between the applicant and an outstanding violation. The states are not required to follow the AVS or AVSO recommendation; but under their respective Memoranda of Understanding ("MOU") with OSM, the states are required to consider any information they receive from the AVS or AVSO before issuing a permit. OSM and DMLR entered into a MOU that requires Virginia to participate in the AVS and to refuse permits to any person the AVS links to a violator unless (1) the ownership or control link has been shown to be erroneous or (2) the applicant proves that the violation has been, or is being, abated or is the subject of a good faith appeal.

The ownership or control link is determined by using the standards set forth in 30 C.F.R. §§ 773.5 and 773.15(b)(1). The ownership and control information in the AVS comes from two sources: 1) information submitted in applications for surface mining permits pursuant to § 507 of SMCRA, 30 U.S.C. § 1257, and equivalent state requirements; and 2) information developed through research conducted by the AVSO's Lexington, Kentucky office. At present, violations in the AVS consist of state's reports of bond forfeitures, OSM's reports of unabated federal performance standard violations, unpaid federal civil penalties, and unpaid abandoned mine land fees.

When the AVSO identifies a link to an unabated violation, the AVSO sends a letter, hereinafter referred to as the thirty-day letter, to the identified entity notifying the entity that the link has been discovered. The entity then has thirty days to submit material that may correct the violation information or rebut an ownership or control link to the outstanding violation. The entity may wish to contest the status of the violation or the ownership or control link. The "status" of the violation includes whether such violation has been corrected, is being corrected, or is the subject of a good faith appeal. The "ownership or control" link is reviewed under 30 C.F.R. §§ 773.5 and 773.15(b)(1). However, the AVSO does not review the "validity" of federal or state violations. The validity of the violation refers to whether a violation existed at all or was the responsibility of the party cited.

If there is no response to the thirty-day letter, the AVSO will recommend denial of any pending or future permit. If the material submitted in response to the thirty-day letter is unpersuasive, the AVSO will respond by letter, hereinafter referred to as the ten-day letter, explaining why the AVSO continues to believe the link exists. OSM will provide the company with its documentation and suggest the type of documentation the company could submit to show that there is no link. The entity then has ten days to respond. If there is no response to the ten-day letter, the information is entered into the AVS. If a person responds to the ten-day letter, but does not rebut the link, the Director of the OSM ("Director") issues OSM's final decision notifying the entity that a link has been created.

After a permit is denied, an applicant may challenge any basis for a denial, including the status or validity of an outstanding violation or the ownership or control link to an una-

bated violation. SMCRA and its implementing regulations establish procedures for review of decisions on permit applications. 30 U.S.C. § 1264. When OSM is the regulatory authority, a decision denying an application for a surface coal mining permit may be appealed to the department's Office of Hearings and Appeals, hearing division pursuant to 43 C.F.R. §§ 4.1360–4.1388. An adverse decision of the hearings division may be appealed to the Interior Board of Land Appeals pursuant to 43 C.F.R. §§ 4.1369, 4.1378, and 4.1388. A decision by the Interior Board of Land Appeals is subject to judicial review pursuant to 30 U.S.C. § 1276. Alternatively, if the hearings division upholds OSM's decision to deny a new surface mining permit, the applicant may bypass the Interior Board of Land Appeals and seek judicial review of the hearing division's decision pursuant to 30 U.S.C. § 1276(a)(2) and 43 C.F.R. § 4.1369(A).2

In evaluating the use of the AVS by OSM in this case, the Court is guided by the well settled principle that an agency's rules and regulations are binding upon it as well as the general population. *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1956); *Electronic Components Corp. of N.C. v. N.L.R.B.*, 546 F.2d 1088, 1090 (4th Cir. 1976). Courts in the Fourth Circuit have required strict compliance by an agency with its own regulations. *United States v. Heffner*, 420 F.2d 809 (4th Cir.1970). Accordingly, OSM is bound to follow the regulations enacted pursuant to the SMCRA.

When OSM entered Fincastle's name into the AVS, it did so on the basis of a supposed link with Hobbs. Fincastle was not independently in violation of any mining regulation, instead it was considered to "own or control" the violator, Hobbs. The violation for which Hobbs had been cited involved the forfeiture of its bond. Under SMCRA before a surface mining permit can be issued, a company must post a "performance bond" of not less than $10,000. 30 U.S.C. § 1259(a); 30 C.F.R. § 800.14(b). Virginia has a similar statutory requirement, but the minimum amount of the bond is $40,000. Va.Code Ann. § 45.1–270.3.

Hobbs had posted a proper bond of $10,000 thus meeting the Federal requirements and prior Virginia law. Hobbs' violation occurred when the Virginia bond requirement was raised from $10,000 to $40,000 and Hobbs was unable to post the additional $30,000. It was after this forfeiture that OSM entered Hobbs' name in the AVS and subsequently linked Fincastle to Hobbs. The question now becomes whether it was permissible for OSM to make a violation determination based solely on Hobbs' state violation.

Under the MOU between Virginia and OSM, Virginia is required to query the AVS before a permit is issued. If an applicant appears on the AVS, Virginia is all but required to deny the permit. In this case, when Virginia queried AVS, Fincastle appeared on the system as linked to a violator, Hobbs. As a result Virginia denied Fincastle's permit application.[2] This procedure was proper in light of the MOU. The action which this Court finds impermissible, considering the statutory and regulatory language, is that OSM entered Hobbs' name in the AVS for a state violation and then "linked" Fincastle, thereby requiring Fincastle to abate the *state* violation of Hobbs. In effect OSM was attempting to enforce Virginia's bonding requirement by holding Fincastle responsible for the abatement of the state forfeiture.

When Congress enacted the SMCRA it envisioned a cooperative effort between the federal government and the states in dealing with surface mining. A key feature of the legislation was the ability of the states to achieve "primacy" over the regulation of non-federal lands. 30 U.S.C. § 1253 and 30 C.F.R. § 701.4.[3] Once a state achieves pri-

---

2. It is the understanding of the Court that no action, linking Hobbs and Fincastle, has been taken by Virginia.

3. Section 1253 reads in relevant part:
   Each State in which there are or may be conducted surface coal mining operations on non-federal lands, and which wishes too assume *exclusive jurisdiction* over the regulation of surface coal mining and reclamation operations, ..., shall submit to the Secretary, ..., a State program which demonstrates that such State has the capability of carrying out the

macy, the federal government's role is limited to that of oversight. 30 U.S.C. § 1271. This oversight role is limited by SMCRA and does not encompass the minute enforcement of state regulations undertaken by OSM.

■ The SMCRA and the supporting regulations paint a consistent picture of the role OSM is to play in enforcing Federal mining laws. The role is that of enforcer of federal violations and oversight of state programs where there has been a failure of the state to enforce the "Act".[4] OSM's role is *not* to enforce state law, where federal law is not implicated. *See* 30 U.S.C. § 1254.[5]

30 U.S.C. § 1267(e) requires "inspectors" to report any violation of "any requirement of any State or Federal program or of this chapter" to the "regulatory authority." Inspectors in this context are state inspectors[6] and "regulatory authority" is defined at 30 C.F.R. § 700.5 as "the State regulatory authority where the State is administering the Act under a State regulatory program."

Again, it is clear that the intent of Congress, as gleaned from the language of the Act, was to allow states to be the primary enforcer of their own laws as long as those laws do not conflict with the Act. As the facts of this case clearly demonstrate, there is no conflict between Virginia law and federal law on the issue of bond amount. Lacking any conflict, Virginia had the primary responsibility for making violation determinations. When OSM entered Fincastle into the

system based upon Hobbs' violation it was usurping the enforcement role assigned to Virginia under SMCRA.

The broadest source of power for OSM in dealing with state violations is found in 30 C.F.R. § 843.12(a). Under this provision a federal inspector can issue a NOV for any violation of "the Act, the State program, or any condition of permit or exploration approval required by the Act which does not create an imminent danger or harm." While this power appears to allow OSM to police state programs, there is one caveat: the inspector must first "give a written report of the violation to the State ... so that appropriate action can be taken by the State."[7]

This caveat reinforces the idea that the state is the primary enforcer of its own laws. These are procedural safeguards which prevent the federal government from running pell mell over the rights of the states to enforce their own laws. Another example of this separation of state and federal enforcement is illustrated by the comments to 30 C.F.R. § 773.[8] In describing the wording and adoption of the final rule, OSM admitted that "{t}his rule does not authorize OSMRE {Office of Surface Mining Reclamation and Enforcement} to take any action that would interfere with State permitting activities. Section 843.21 requires OSMRE to request that the State authority take the lead role in curing a defective permit." 54 F.R. 18438–01.

provisions of this chapter.... (emphasis added).
Section 701.4 reads:
A State regulatory authority shall assume primary responsibility for regulation of coal exploration ... upon submission to and approval by the Secretary of a State program.

4. "Act" is defined as "the Surface Mining Control and Reclamation Act of 1977 (Pub.L. 95–87)." 30 C.F.R. § 700.5.

5. Under 30 U.S.C. §§ 1254 and 1271(b) the federal government can only enforce a state program if: 1) the Secretary finds the state has failed to enforce its program; 2) gives public notice and notice to the state of the failure to enforce its program; and 3) finds at a public hearing that the state has neither the capacity or intent to enforce its program. The record does not indicate that there has been such a finding in this case.

6. In the regulations covering enforcement procedures of non-imminent dangers or harms, 30 C.F.R. § 722.12(a) allows a *federal* inspector to issue a notice of violation ("NOV") to a party if there is a violation of "any requirement of the Act." As noted above the "Act" refers only to federal law. This explicit grant of authority, to issue NOVs, does not extend to situations where only state law is violated. The regulation is clear in its delineation of enforcement authority.

7. Section 843.12(a)(2) goes on to allow the inspector to issue the NOV if after ten days from notification the state fails to take action to correct the violation. No such notice was given and no opportunity to take appropriate action was allowed.

8. § 773 deals with the procedures for dealing with improvidently issued mining permits.

■ Finally and most importantly, 30 C.F.R. § 720.11 states clearly:

> Nothing in the Act or these regulations shall be interpreted to preclude a State from exercising its authority to enforce State law, regulations, and *permit conditions*, unless compliance with the State law, regulations or permit condition will preclude compliance with these regulations.

*Id.* (emphasis added). There can be no clearer restraint on the federal government than this simple but powerful language. Where state law is in compliance with federal law, the state is the primary enforcement authority.

■ The statutes and regulations analyzed above indicate without relevant exception that the state is the primary enforcement authority of state mining laws. *See also* 30 C.F.R. § 732.15 (criteria for state program approval); § 733.12 (substitution of federal for state enforcement); § 735 (grants for state programs); § 764.25 (regulatory authority responsibility for implementation); § 840.13 (state regulatory authority); and § 846.5 (definition of a violation for individual civil penalties). OSM may only enforce state law where the state fails to do so and after a statutorily defined procedure has been followed. There is absolutely no evidence before this Court to indicate that Virginia has so failed.

### CONCLUSION

This Court concludes that OSM exceeded its statutory and regulatory authority when it used the AVS to link Fincastle to Hobbs based upon a state violation which did not implicate federal law. While the idea of federalism is often viewed as an archaic notion, it is the foundation upon which our Constitution rests. *See Debates of the Federal Constitutional Convention. Ibid.* In enacting the SMCRA, Congress attempted to maintain the fragile balance between the federal and state governments established by the founders. It is this balance which OSM has upset with its trampling of the state's right to enforce its own laws. Under the laws and regulations of Title 30 of the United States Code OSM has violated its own regulations

and exceeded its authority. *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1956); *Electronic Components Corp. of N.C. v. N.L.R.B.,* 546 F.2d 1088, 1090 (4th Cir.1976). OSM's actions are hereby void and it is enjoined from further actions inconsistent with this opinion. As this ruling provides complete for the plaintiff under Count I the Court reserves judgment as to Counts II and III.